Kenneth Steely, Esq.
BLACKSTONE TRIAL LAW
1200 Corporate Drive, Suite 425
Birmingham, AL 35242
Telephone: (205) 482-5558
kenneth.steely@blackstonetrial.com
(Admitted Pro Hac Vice)

Christopher R. Jones, WSB# 7-4837
GORDON REES SCULLY MANSUKHANI, LLP
515 E. Ivinson, Suite 108
Laramie, WY 82070
Telephone: (307) 365-6741
Facsimile: (307) 222-7825
crjones@grsm.com
(Local Counsel)

Counsel for Defendant Dr. Jeffery Scott

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CHRISTOPHER D. HARRELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERY SCOTT, et al.,<br><br>Defendants. | Civil No. 2:25-cv-00086-KHR<br><br>**DEFENDANT JEFFREY SCOTT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S COMBINED MOTION FOR A RESTRAINING ORDER AND PERMANENT INJUNCTION (DOC. 28) AND PLAINTIFF'S MOTION FOR COURT ORDER FOR PRESERVATION OF EVIDENCE (DOC. 27)** |

Defendant Jeffery Scott, D.O., through undersigned counsel and pursuant to the Court's June 22, 2026, Order (Doc. 32) and the deadline set by the July 6, 2026 Order (Doc. 39), respectfully submits this combined Response in Opposition to Plaintiff Christopher D. Harrell's Combined Motion for a Restraining Order and Permanent Injunction (Doc. 28) and Plaintiff's Motion for Court Order for Preservation of Evidence (Doc. 27). Both motions should be denied as to Dr. Scott.

Plaintiff seeks extraordinary, mandatory injunctive relief directing prison medical and dietary operations across the Wyoming Department of Corrections system. He cannot satisfy any of the four requirements for such relief, and he cannot satisfy the heightened standard the Tenth Circuit applies to the disfavored, mandatory relief he demands. Most importantly, Plaintiff cannot show a likelihood of success on the merits of his deliberate-indifference claim against Dr. Scott. The developed medical record establishes continuous evaluation, diagnostic testing, specialty referral, medication management, and nutritional monitoring—the antithesis of a conscious disregard of a known, excessive risk. Separately, Dr. Scott ceased serving as NaphCare's Regional Medical Director on June 1, 2026, and has no authority to direct Plaintiff's medical or dietary care; no order against him could grant the operational relief Plaintiff seeks. Finally, Plaintiff's motion to preserve security-camera footage fails as to Dr. Scott because Dr. Scott has no access to, custody of, or control over any Wyoming Department of Corrections security cameras or video footage.

**RESERVATION OF DEFENSES**

Dr. Scott has not been served with process in this action. The Magistrate Judge has already found, as a matter of record, that neither remaining defendant "has been served with process." (Doc. 39). Dr. Scott appears solely to comply with the Court's Order directing a response (Doc. 32), and he does not waive, but expressly preserves, all defenses available under Federal Rules of Civil Procedure 12(b), including insufficient service of process and lack of personal jurisdiction, consistent with the reservations stated in his prior appearances (Docs. 36, 42). *See Section VII, infra.* Nothing in this Response constitutes a general appearance or a waiver of those defenses.

## RELEVANT BACKGROUND

### I. THE TENTH CIRCUIT'S REMAND IS A PLEADING-STAGE RULING, NOT A MERITS DETERMINATION.

Plaintiff filed this 42 U.S.C. § 1983 action pro se on March 27, 2025. The district court screened and dismissed the Complaint under 28 U.S.C. § 1915A(b)(1), and judgment entered in July 2025. On May 28, 2026, the Tenth Circuit affirmed in part and reversed in part, reinstating only the deliberate-indifference and retaliation claims against Dr. Scott and a deliberate-indifference claim against Edna Curry, while affirming dismissal of every other defendant and claim, including NaphCare, YesCare, Dr. Eskew, Warden Norris, Director Shannon, Dr. Church, Nurse Wyse, and the Department of Corrections. (Doc. 30-1). The Tenth Circuit expressly reviewed the screening dismissal under the Rule 12(b)(6) standard and accepted Plaintiff's allegations as true for that limited purpose. (*Id.* at 12). That order determined only that Plaintiff had pleaded enough to proceed; it did not adjudicate the merits, and it did not find that Plaintiff is likely to prove deliberate indifference or retaliation.

### II. DR. SCOTT'S PERSONAL TREATMENT OF PLAINTIFF WAS THOROUGH AND RESPONSIVE.

Dr. Scott first evaluated Plaintiff on November 14, 2024, for chronic diarrhea, formed a working differential diagnosis, ordered inflammatory-marker and stool studies, recommended pan-endoscopy, and continued the FODMAP diet a prior provider had ordered. (Decl. of Jeffrey L. Scott, D.O., Exhibit A, ¶ 4). Over the following months, Dr. Scott ordered and reviewed stool studies that returned normal or negative results, including a fecal calprotectin within the normal range, with the results documented as showing "no evidence of diarrhea." (Ex. A, ¶¶ 5–6). He trialed pancreatic enzyme supplementation, reviewed Plaintiff's commissary purchases (which repeatedly included high-FODMAP, high-sugar items inconsistent with the diet), and met with

Plaintiff on multiple occasions, at times with Dr. Church present, to explain the treatment plan. (*Id.* ¶¶ 6–12).

Dr. Scott discontinued the FODMAP diet on January 29, 2025, based on accepted medical guidance that a low-FODMAP diet is a short-term elimination tool (generally two to six weeks), on Plaintiff's own written identification of gluten as his primary problematic food, and on Plaintiff's continuing weight loss on the prolonged restrictive diet; he placed Plaintiff on a gluten-free diet and continued to order testing and specialist referral. (Ex. A, ¶¶ 10, 12–14). Dr. Scott states, under penalty of perjury, that this decision was clinical and was not made in retaliation for any grievance, complaint, or protected communication. (*Id.*, ¶¶ 13, 34). Dr. Scott obtained a corporate second opinion, and Plaintiff was evaluated by gastroenterology, which recommended additional serologies and testing. (*Id.*, ¶¶ 18–20). Objective testing—including celiac serology, allergy testing, and metabolic panels—repeatedly returned negative or normal, and did not demonstrate malnutrition. (*Id.*, ¶¶ 16, 20, 23).

## III. PLAINTIFF'S CURRENT COMPLAINTS CONCERN LATER DECISIONS BY NON-PARTY PROVIDERS AT A DIFFERENT FACILITY.

Dr. Scott's direct, in-person treatment of Plaintiff ended in approximately March 2025, after which day-to-day care passed to other on-site providers and, following Plaintiff's transfer, to Dr. Susanne Levene at a different facility. (Ex. A, ¶ 24). Plaintiff's motion attributes the deprivation underlying his request for emergency relief—his removal from the FODMAP diet on February 5, 2026, and the discontinuation of Ensures—to Dr. Levene, a non-party physician, not to Dr. Scott. (Doc. 28 ¶¶ 2, 6(l)–(n)). "The subsequent medical record, developed by other providers …, independently confirms that a permanent low-FODMAP diet was not medically required", and that "discontinuation of the FODMAP diet does not cause the mucosal or rectal findings" Plaintiff describes. (Ex. A, ¶¶ 29–32, 35). Even Plaintiff's exhibits to his motion support that Plaintiff was

not suffering. As noted in Director Daniel Shannon's May 6, 2026, response to Plaintiff concerning his letter to the Governor, as of April 2026, Plaintiff maintained a healthy body weight with a Body Mass Index of 21.8. (Doc. 28-3 at 11).

Plaintiff's medical care has continued without interruption since Dr. Scott's involvement ended. On June 30, 2026, physician assistant Michelle Lucero, PA-C, conducted an approximately two-hour telemedicine encounter with Plaintiff for his gastrointestinal complaints, after reviewing his extensive medical records, prior consultant reports, and diagnostic studies. (Decl. of Michelle Lucero, PA-C, Exhibit B, ¶¶ 7–11). During that encounter, PA Lucero addressed Plaintiff's request for a low-FODMAP diet, developed a treatment plan that included a monitored medication trial for his reported chronic diarrhea, and planned follow-up and a possible multidisciplinary meeting. (*Id.*, ¶¶ 13–18.) PA Lucero further confirms that Plaintiff had a July 8, 2026 telemedicine encounter with Dr. James Bishop regarding offsite testing, that the testing returned negative, and that Plaintiff's gastrointestinal workup continues under her management. (*Id.*, ¶¶ 22–25.)

### IV. DR. SCOTT NO LONGER HOLDS THE ROLE THROUGH WHICH PLAINTIFF SEEKS RELIEF.

As of June 1, 2026, Dr. Scott no longer serves as Regional Medical Director for NaphCare, maintains no office with NaphCare, provides no medical services to Plaintiff or any WDOC inmate, and has no access to security cameras or video footage. (Ex. A, ¶¶ 1, 36). He has no current authority over Plaintiff's medical or dietary orders at Plaintiff's present facility. (*Id.*, ¶ 36).

## ARGUMENT

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain one, the movant must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Id.* at

20; *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Because Plaintiff seeks relief affecting prison conditions, any order must also comply with the Prison Litigation Reform Act, which requires prospective relief to be narrowly drawn, extend no further than necessary, and be the least intrusive means necessary to correct the alleged harm. 18 U.S.C. § 3626(a)(1)(A). Plaintiff fails each element, and his request runs headlong into the heightened standard governing the disfavored, mandatory relief he seeks.

## I. PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. The Tenth Circuit's remand order is not a merits determination.

Plaintiff's motion rests on the premise that the Tenth Circuit "determined" that Dr. Scott's conduct constituted deliberate indifference and retaliation. (Doc. 28, ¶ 4(d)). It did no such thing. The Tenth Circuit reviewed a screening dismissal under 28 U.S.C. § 1915A(b)(1), applied the Rule 12(b)(6) standard, and accepted Plaintiff's allegations as true for purposes of that review. (Doc. 30-1 at 2, 10–12). The footnotes Plaintiff quotes confirm the point: the court held only that Plaintiff had "adequately alleged" the objective component "[a]t the pleading stage." (Doc. 28, ¶ 4(d) (quoting Doc. 30-1)). A plausible claim is not a probable one. A complaint may survive screening and still fail once defendants challenge the compliant or the medical record is developed. Plaintiff's reliance on the remand order therefore does not carry his burden to show a present likelihood of success on the merits.

### B. Plaintiff is unlikely to prove deliberate indifference against Dr. Scott.

The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But the Supreme Court made clear in the same decision that "an inadvertent failure to provide adequate medical care," negligence, medical malpractice, or "a difference of opinion" about the course of treatment does not state a

constitutional claim. *Id.* at 105–07. The test has two components, an objective component and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective component asks whether the medical need is sufficiently serious. The subjective component, the decisive inquiry here, requires proof that the official "knows of and disregards an excessive risk to inmate health or safety"; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The subjective standard is demanding, and it is fatal to Plaintiff's motion. Where an inmate receives treatment and complains only that it was inadequate or that a different course should have been chosen, the claim "sounds in medical malpractice, not constitutional deprivation," and "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Self v. Crum*, 439 F.3d 1227, 1231, 1233 (10th Cir. 2006). Matters of medical judgment do not give rise to a deliberate-indifference claim absent extraordinary circumstances not present here. *Id.* at 1232. Even Plaintiff's own authority underscores that the doctrine targets the denial or the deliberate interruption of access to care, not the exercise of clinical judgment among reasonable options. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

The record forecloses the subjective component. It shows the opposite of conscious disregard: Dr. Scott personally evaluated Plaintiff, ordered inflammatory-marker and stool studies, recommended and pursued pan-endoscopy, trialed medications, referred Plaintiff to gastroenterology, obtained a corporate second opinion, monitored Plaintiff's nutritional status through repeated laboratory testing, and adjusted the diet in response to objective findings and Plaintiff's own written food list. (Ex. A, ¶¶ 4–23, 33). A physician who orders this volume of

diagnostic work-up, specialist referral, and medication management does not "disregard" a known risk; he engages it.

The two declarations submitted with this Response underscore the point. Together, they identify no fewer than sixteen discrete clinical encounters, specialty evaluations, and procedures, along with numerous additional diagnostic studies, laboratory panels, chart reviews, and a corporate second-opinion consultation, addressing Mr. Harrell's gastrointestinal complaints over the approximately twenty-month period from November 14, 2024 through July 8, 2026, with care continuing thereafter. (Ex. A, ¶¶ 4–33; Ex. B, ¶¶ 7–25). A course of care this sustained and this thoroughly documented is the antithesis of deliberate indifference. *See Estelle*, 429 U.S. at 105–07.

The medical evidence undermines each premise of Plaintiff's motion. First, Plaintiff has not shown that a permanent FODMAP diet is medically required. The post-procedure instructions on which he relies say only "resume current diet," "resume previous diet," or "resume your regular diet or one recommended by your physician" (Doc. 28-3); they are generic discharge forms, not an order mandating a permanent FODMAP diet, double portions, a fourth daily meal, vendor-canteen access, or four Ensures per day. Gastroenterology documentation explains that a low-FODMAP diet is a temporary, diagnostic elimination tool, not an indefinite treatment. (Ex. A, ¶¶ 10, 27). Second, objective testing does not support Plaintiff's food-allergy or celiac theory: celiac serology and standard allergy testing have repeatedly been negative. (*Id.*, ¶¶ 20, 35). Third, the record does not show that Dr. Scott ignored malnutrition; total protein, albumin, and prealbumin were within normal limits, and monitoring continued. (*Id.*, ¶ 16). Fourth, subsequent providers rejected the very causal theory underlying Plaintiff's requested relief, documenting that discontinuation of a FODMAP diet does not cause focal active colitis or rectal findings and that a

FODMAP diet is a symptom-management strategy rather than a treatment for mucosal inflammation or structural findings. (*Id.*, ¶¶ 31–32, 35).

At most, Plaintiff shows a disagreement about the best approach to complex gastrointestinal complaints. That is not a constitutional claim. *Self*, 439 F.3d at 1231–32. Because Plaintiff cannot establish the subjective component of deliberate indifference, he cannot show a likelihood of success on the merits, and his motion fails at the threshold.

**C. Plaintiff is unlikely to prove retaliation against Dr. Scott.**

Plaintiff's retaliation theory fares no better. A prison-retaliation claim requires protected activity, an injury that would chill a person of ordinary firmness from engaging in the protected activity, and proof that the protected activity was a substantial motivating factor for the adverse action. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 1998). The Tenth Circuit held only that Plaintiff plausibly pleaded this claim because the January 2025 diet decision followed his draft civil-rights complaint. (Doc. 30-1 at 16–17). That pleading-stage inference does not establish likely success. The record supplies a documented, non-retaliatory medical rationale for discontinuing the FODMAP diet: the diet is a short-term diagnostic tool, Plaintiff had already used it to identify problematic foods, his work-up was ongoing, and he continued to lose weight on the restrictive diet. (Ex. A, ¶¶ 10, 13, 34). Dr. Scott attests under penalty of perjury that the decision was clinical and not retaliatory. (*Id.*, ¶¶ 13, 34). Where an independent medical basis supports the decision, Plaintiff cannot show that retaliation was the substantial motivating factor, and the causal chain is further broken by the fact that the deprivation Plaintiff now challenges was the act of a non-party provider a year later. (Doc. 28 ¶¶ 2, 6(n)).

## II. PLAINTIFF SEEKS A DISFAVORED, MANDATORY INJUNCTION AND CANNOT MEET THE HEIGHTENED STANDARD.

The Tenth Circuit treats three categories of preliminary injunction as disfavored, and it requires a movant seeking one to make a "strong showing" that the *Winter* factors weigh heavily and compellingly in his favor: (1) mandatory injunctions that require affirmative action rather than preserving the status quo; (2) mandatory preliminary injunctions, and (3) injunctions that would grant the movant substantially all the relief he could recover after trial. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005); *Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016). Plaintiff's requested order falls into all three disfavored categories.

Plaintiff's requested relief is not prohibitory and preserves nothing; it commands affirmative acts, restoring a specific permanent diet, doubling food portions, adding a fourth daily meal, granting outside-vendor canteen access, and serving four Ensures per day. (Doc. 28 ¶¶ 11–16). It would grant Plaintiff essentially all the injunctive relief he could obtain after a full trial, before Dr. Scott has even answered. Further, it would displace the Department of Corrections' operation of its meal service, portioning, and approved-vendor systems. Plaintiff cannot make the heightened, "heavily and compellingly" showing these categories require, particularly given his inability to show a likelihood of success on the merits.

## III. DR. SCOTT NO LONGER HAS AUTHORITY TO DIRECT PLAINTIFF'S CARE, AND NO ORDER AGAINST HIM COULD PROVIDE THE REQUESTED RELIEF.

Independent of the merits, the relief Plaintiff seeks cannot run against Dr. Scott. Plaintiff demands prospective, operational relief—ongoing control of a diet, portions, meals, supplements, and canteen access "for the entire Wyoming DOC system no matter what facility Harrell is housed in." (Doc. 28 ¶¶ 11–16). But Dr. Scott ceased serving as Regional Medical Director on June 1, 2026; he maintains no office with NaphCare, provides no care to Plaintiff, and has no authority

over Plaintiff's medical or dietary orders. (Ex. A, ¶¶ 1, 36). An injunction must be capable of redressing the alleged injury through an order against the enjoined party. An order directing a former regional medical director to guarantee dietary and food-service outcomes at a facility where he no longer works, through staff he does not supervise, would neither remedy Plaintiff's alleged injury nor comply with Rule 65(d).

Federal Rule of Civil Procedure 65(d)(1) requires an injunction to state its terms specifically and describe in reasonable detail the acts required, and Rule 65(d)(2) limits an injunction's binding effect to the parties and those in active concert with them. Fed. R. Civ. P. 65(d). Plaintiff sues Dr. Scott for injunctive relief in his official capacity, but an official-capacity claim is, in substance, a claim against the entity the officer represents, not the individual. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because Dr. Scott no longer holds the office through which the requested relief would operate, an order against him personally cannot deliver the systemwide, prospective diet-and-supplement regimen Plaintiff demands. See *Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010) (inmate's motion for preliminary injunction denied as it was directed against non-parties to his complaint, and neither his motion or his complaint alleged a system-wide denial). This defect independently requires denial of the injunction as to Dr. Scott.

The request also reaches far beyond the surviving claims. The Tenth Circuit affirmed dismissal of NaphCare, the Department of Corrections, Director Shannon, Warden Norris, Dr. Church, and Nurse Wyse, yet Plaintiff's motion seeks relief "through" those very persons and entities. (Doc. 28 ¶¶ 11–16; Doc. 30-1). An injunction cannot bind non-parties or revive dismissed parties, Fed. R. Civ. P. 65(d)(2), and it cannot compel Dr. Scott to guarantee performance by kitchen staff, a canteen vendor, or a facility where he does not work.

## IV. PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM REDRESSABLE BY AN ORDER AGAINST DR. SCOTT.

A movant must show that irreparable harm is likely—not merely possible—in the absence of relief. *Winter*, 555 U.S. at 22. Plaintiff's claimed harm is not tied to any current conduct of Dr. Scott. By Plaintiff's own account, his removal from the FODMAP diet on February 5, 2026, was the act of Dr. Levene at a different facility. (Doc. 28 ¶¶ 2, 6(n)). Dr. Scott does not control those decisions and, as of June 1, 2026, holds no role that could. (Ex. A, ¶¶ 1, 36). The record further reflects ongoing medical monitoring, diagnostic evaluation, specialty referral, and provider review—not an untreated, imminent emergency. (*Id.*, ¶¶ 24–32). Plaintiff's disagreement with his current course of treatment does not establish irreparable harm, and an order against Dr. Scott would not prevent the injury Plaintiff describes.

The record confirms that care is ongoing: PA Lucero spent approximately two days reviewing Plaintiff's medical records concerning his gastrointestinal concerns, conducted a two-hour telemedicine evaluation of Plaintiff on June 30, 2026, developed a treatment plan for his reported gastrointestinal symptoms, and confirms that his workup continues under her management following a further telemedicine encounter on July 8, 2026. (Ex. B, ¶¶ 7–9, 15, 22–25).

## V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST THE INJUNCTION.

The final two factors merge where, as here, the relief affects government operations. *Denver Homeless out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff asks the Court to impose a detailed, permanent, systemwide diet-and-supplement regimen that would displace clinical judgment, correctional food-service protocols, portioning, supplement administration, and approved-vendor canteen systems, and would require ongoing judicial supervision of prison operations. That burden is

substantial. Denying the motion, by contrast, leaves Plaintiff under continuing medical care and evaluation. (Ex. A, ¶¶ 24–32). The public interest favors constitutionally adequate care, but it also favors deference to the professional judgment of medical providers and prison administrators. The PLRA reinforces the point: prison-conditions relief must be narrowly drawn, extend no further than necessary, and be the least intrusive means necessary. 18 U.S.C. § 3626(a)(1)(A). Plaintiff's proposed relief is none of those things—it is permanent, systemwide, operational, and directed through a physician who no longer holds the relevant role.

## VI. THE REQUEST FOR A PERMANENT INJUNCTION IS PREMATURE.

Plaintiff also seeks a "permanent" injunction. (Doc. 28). A permanent injunction requires actual success on the merits, not just a likelihood of success, together with irreparable injury, the inadequacy of legal remedies, a balance of hardships favoring the movant, and a public interest that would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Supreme Court has distinguished the "likelihood of success" that supports preliminary relief from the "actual success" a permanent injunction demands. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Dr. Scott has not answered, no discovery has occurred, and no adjudication has resolved Plaintiff's claims on the merits. Plaintiff cannot show actual success because there has been no merits determination at all. The permanent-injunction request should be denied as categorically premature.

## VII. PLAINTIFF'S FAILURE TO SERVE DR. SCOTT INDEPENDENTLY COUNSELS AGAINST RELIEF.

Service of a summons and complaint—or a valid waiver—is the mechanism by which a federal court obtains personal jurisdiction over a defendant, and a defendant's obligation to litigate runs from service or waiver, not from informal notice of the suit. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Absent service authorized by Rule 4 or a waiver,

a court ordinarily may not exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The Magistrate Judge has already found that Dr. Scott "has [not] been served with process." (Doc. 39). Dr. Scott responds only because the Court ordered a response (Doc. 32), and he preserves his Rule 12(b)(2) and 12(b)(5) defenses. That Plaintiff seeks immediate, permanent, operational relief against an unserved defendant—before any responsive pleading, discovery, or evidentiary development—is a further reason the Court should decline to enter the extraordinary relief requested.

### VIII. PLAINTIFF'S MOTION TO PRESERVE EVIDENCE SHOULD BE DENIED AS TO DR. SCOTT.

Plaintiff's separate Motion for Court Order for Preservation of Evidence (Doc. 27) seeks an order preserving "all security camera footage" and recordings of meetings with prison officials held at Wyoming Department of Corrections facilities. (Doc. 27 ¶¶ 1, 4–5). Whatever the merits of that request as directed to the custodian of the footage, it fails as to Dr. Scott for a simple reason: Dr. Scott has no access to, custody of, or control over any WDOC security cameras or video footage. (Decl. ¶¶ 1, 36). The equitable factors Plaintiff himself invokes, including "the capability of the party to maintain the evidence sought to be preserved" (Doc. 27 ¶ 2), confirm the point: Dr. Scott is not capable of preserving footage he cannot access and never controlled, and he is not the entity that maintains the correctional facilities' surveillance systems. Any preservation order directed at Dr. Scott would be futile and improper. To the extent the Court entertains the motion at all, relief should be directed to the party with custody and control of the footage, not to Dr. Scott.

## CONCLUSION

Plaintiff has not satisfied any of the four injunction factors, cannot meet the heightened standard governing the disfavored, mandatory relief he seeks, and cannot show actual success required for a permanent injunction. Dr. Scott no longer holds the role through which the requested relief would operate, and Plaintiff has not served him. His motion to preserve evidence fails as to

Dr. Scott because Dr. Scott has no access to or control over the footage at issue. For these reasons, Dr. Scott respectfully requests that the Court deny Plaintiff's Combined Motion for a Restraining Order and Permanent Injunction (Doc. 28) and Plaintiff's Motion for Court Order for Preservation of Evidence (Doc. 27) as to Dr. Scott, together with such further relief as the Court deems just.

Respectfully submitted this 21st day of July, 2026.

/s/ Kenneth Steely
Kenneth Steely, Esq.
BLACKSTONE TRIAL LAW
1200 Corporate Drive, Suite 425
Birmingham, AL 35242
(205) 482-5558
kenneth.steely@blackstonetrial.com
(Admitted Pro Hac Vice)

Christopher R. Jones, WSB# 7-4837
GORDON REES SCULLY MANSUKHANI, LLP
(Local Counsel)
Counsel for Defendant Dr. Jeffery Scott

## CERTIFICATE OF SERVICE

I certify that on the 21st day of July, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that a true and correct copy was served upon Plaintiff Christopher D. Harrell, WSP #26939, P.O. Box 400, Rawlins, Wyoming 82301, by United States mail, postage prepaid, at his address of record.

/s/ Kenneth Steely
Kenneth Steely