FILED
UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING
7:44 am, 8/31/26
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

CHRISTOPHER D. HARRELL,

Plaintiff,

VS.

JEFFREY SCOTT, et al.,

Defendants.

Case No. 25-CV-86-R

**ORDER DENYING PLAINTIFF'S COMBINED MOTION FOR RESTRAINING ORDER AND PERMANENT INJUNCTION [28]**

This matter is before the Court on Plaintiff Christopher D. Harrell's Combined Motion for Restraining Order and Permanent Injunction. [ECF No. 28]. The Court, having considered the Motion, Responses, Reply and being fully advised on the matter, rules as follows: Plaintiff requests immediate injunctive relief for the alleged failure of the Wyoming Medium Correctional Institute and the Wyoming Department of Corrections to comply with his FODMAP diet. The Court finds Plaintiff is not entitled to his requested relief and his motion must be denied. First, Plaintiff is prematurely seeking permanent injunctive relief. Next, Plaintiff's request must be denied even construing it as one for temporary relief. Plaintiff does not make the necessary connection between the injuries claimed in the request for injunctive relief and those remaining at issue in this action.

## BACKGROUND

Plaintiff, pro se, filed a §1983 prisoner civil rights Complaint on March 27, 2025. [ECF No. 1]. Plaintiff filed a motion seeking to amend his original complaint on May 14, 2025. [ECF No. 11]. Plaintiff's Complaint and proposed amended complaint alleged multiple constitutional violations, including Eighth Amendment claims based on inadequate medical care and insufficient access to food, as well as a retaliation claim related to the exercise of his constitutional rights. Plaintiff further asserted that the Department of Corrections failed to adequately train its staff and challenged the facial constitutionality of a prison regulation under the First Amendment. Finally, Plaintiff brought a state law claim under Wyo. Stat. Ann. § 6-5-112. The Court conducted an initial screening under 28 U.S.C. § 1915(A) and dismissed Plaintiff's Complaint and denied his request to file his proposed amended complaint for failure to state a claim upon which relief may be granted. [ECF No. 12]. Plaintiff appealed the Court's dismissal of all claims and causes of action.

The Tenth Circuit Court of Appeals affirmed in part, and reversed in part this Court's previous rulings. Specifically, the Tenth Circuit affirmed the dismissal of all claims against all Defendants except for the nutrition/medical care deliberate indifference claim and retaliation claim against Dr. Scott, and the deliberate indifference denial of nutritional care against Ms. Curry. [ECF No. 30-1]. The Tenth Circuit's Order and Judgment set forth a detailed background outlining the alleged facts and circumstances underlying Plaintiff's claims.

In late 2023, Mr. Harrell, incarcerated at the Wyoming Medium Correctional Institution, stopped taking medications that he thought were causing gastrointestinal pain and diarrhea. But his symptoms continued, so he sought medical treatment.

**1. FODMAP Diet**

In February 2024, defendant Philip Eskew, a physician, responded to Mr. Harrell's treatment request. Dr. Eskew worked for Defendant YesCare, a health care provider under contract with the Wyoming Department of Corrections ("DOC") to provide medical care to prisoners. He ordered the prison kitchen to put Mr. Harrell on a special diet known as FODMAP. Mr. Harrell spent the next several months "go[ing] through the 'trial and error' phase of attempting to add the food that FODMAP removed, one item at a time, to increase the foods available to [him]." R. at 10, ¶ 16.

Mr. Harrell developed a list of foods that either did or did not cause pain. He shared this list with Defendant Edna Curry, the kitchen supervisor at Wyoming Medium, and Defendant NaphCare, which replaced YesCare as the prison system's contracted medical provider in mid-2024. Ms. Curry then posted a list in the kitchen specifying the foods to serve and not serve to Mr. Harrell, but her list differed from the list Mr. Harrell gave her. For example, it included foods to serve that Mr. Harrell had identified as causing his pain.

Mr. Harrell grieved Ms. Curry's failure to follow his list, apparently to no avail. In October 2024, Ms. Curry forbade Mr. Harrell from speaking directly to the medical diet cooks, on pain of a conduct violation report ("CVR"). Three times in November 2024, Mr. Harrell went 24 hours between meals because the kitchen served him food he had identified as causing pain and refused to provide a replacement meal.

**2. Efforts to Seek Diet Help**

Mr. Harrell already had a lawsuit pending in the United States District Court for the District of Wyoming about a different medical issue. In late November 2024, he filed a motion to order the DOC to provide him foods he could safely eat. On January 8, 2025, with his district-court motion still pending, Mr. Harrell had a long discussion with Defendant Jeffrey Scott, a NaphCare physician who supervises NaphCare's services in Wyoming prisons, and Brian Church, a NaphCare physician newly assigned to Wyoming Medium. By this point, due to administrative errors, Mr. Harrell had missed two colonoscopy appointments intended to help diagnose his condition. Dr. Scott and Dr. Church decided not to reschedule the colonoscopy until Mr. Harrell had tried certain medications for 30 days.

At about this same time, Mr. Harrell sent a written request to Defendant Seth Norris, warden of Wyoming Medium, asking that peas be removed from his diet because they were causing pain.

On January 10, 2025, while the request to Warden Norris was still pending, the district court denied Mr. Harrell's motion for injunctive relief because the alleged wrongs and the requested relief did not relate to the claims alleged in that lawsuit. "Hours after [the district court] issued its ruling, Mr. Harrell was called to medical where [a NaphCare nurse] informed Mr. Harrell that he was being removed from the FODMAP diet." R. at 12, ¶ 23. As he spoke with that nurse, Dr. Church entered the room and joined the conversation. Mr. Harrell explained that foods for sale in the prison canteen were just as harmful to him as the foods usually served from the kitchen. Dr. Church said that if Mr. Harrell would submit a formal health services request, he would authorize Mr. Harrell to order canteen items from an approved outside vendor. Mr. Harrell submitted the request but never heard back.

**3. Open Letter**

Mr. Harrell was not immediately removed from the FODMAP diet, but the impending removal prompted him to write an "open letter" dated January 13, 2025. R. at 13, ¶ 24. It was addressed to the governor and attorney general of Wyoming, Director of the DOC Daniel Shannon, and the NaphCare legal department. He also placed a copy directed to Dr. Scott in the box at his prison where inmates submitted requests for health services.

Mr. Harrell's open letter criticized the handling of his gastrointestinal issues and explained that ending his FODMAP diet would "result in more weight loss [because] the biggest food that causes me problems is wheat (gluten). Since inmates are fed so much gluten as it is a cheap calorie to feed us, I would be missing lots of calories by 'eating around troublesome foods.'" R. at 68. He further stated that his weight had dropped from 213 to 180 pounds between December 2022 and December 2024, on account of insufficient diet. He explained:

> Because I am continuously forced to eat food served in the kitchen that does not comply with FODMAP that causes me tremendous amounts of GI pain, diarrhea, cramps, burning sensations, bloody poop, etc., I am forced to decide how much pain I would like to endure to acquire enough calories to survive.

R. at 69. He added that the kitchen staff was unhelpful and antagonistic when he asked for replacement food items. He asked that the kitchen be required to serve him the FODMAP diet, given it was the only diet he could consistently eat. He also threatened to file a lawsuit, attaching the first page of his intended complaint, which contained a long caption naming Dr. Scott and others as defendants.

On January 27, Warden Norris instructed Ms. Curry to remove peas from Mr. Harrell's diet.

**4. Response to Open Letter**

On January 31, Mr. Harrell received a written response to the open letter from
Dr. Scott, as follows:

> Your FODMAP diet is being discontinued. Your draft of Civil Rights Complaint was reviewed. You indicated you have identified your troubling foods with the biggest issue being Gluten. Gluten is not a sugar[,] it is a protein. FODMAP is not intended to be a long-term diet. It is used for 2-6 week[s] to identify irritating foods[,] which you have successfully done. You also indicated your weight loss[,] which you have had some[,] and is likely due to prolonged use of the FODMAP diet. It is therefore not medically indicated you continue this. You will be placed on a Gluten free diet going forward. You have been referred to a GI doctor and further medication to try and help alleviate your symptoms is up to you.

R. at 73.

Mr. Harrell grieved Dr. Scott's decision. Denied at the initial levels, in mid-February his grievance reached Warden Norris, who denied it. In early March Mr. Harrell appealed to the final level—DOC Director Shannon.

**5. March Weight Loss**

Around this time, Warden Norris instructed the medical department to check Mr. Harrell's weight weekly. On March 12, Mr. Harrell was called down to medical. Dr. Scott was there, and Mr. Harrell told him, "[Y]ou are starving me to death," and described himself as "losing weight like a cancer patient." R. at 17, ¶ 36. Dr. Scott responded that this was Mr. Harrell's "opinion" and said, "[Y]ou do not know what foods are causing you pain." *Id.*

Mr. Harrell weighed 186 pounds on January 31, 2025, the day Dr. Scott ended his FODMAP diet. On March 12, he weighed 168 pounds. "Multiple staff members [had] questioned Mr. Harrell directly about his drastic and sudden loss of weight . . . ." R. at 32, ¶ 88.

On March 18, Mr. Harrell finally visited an outside gastrointestinal specialist, who ordered a colonoscopy, an endoscope, blood and stool samples, and images. By this time, Mr. Harrell had been taking the medication prescribed by Dr. Scott and Dr. Church for close to 50 days, as opposed to the 30 days he was originally told he would need to take it. His symptoms did not improve.

On March 20, when Mr. Harrell went to dinner, the kitchen told him NaphCare had removed him from the gluten-free diet, so he was now expected to eat whatever was being served to the general population. The kitchen told him that NaphCare would give him an explanation, but he

never received one. Mr. Harrell says it was Dr. Scott's decision to end his gluten-free diet. The following day, March 21, at Mr. Harrell's weekly weigh-in, he was down to 164 pounds.

**6. Mailing the Complaint**

Director Shannon had until April to response to Mr. Harrell's final-level grievance. On March 25, fearing he could starve to death in the meantime, Mr. Harrell mailed the complaint that began this lawsuit. He asserted the following causes of action, often collectively against the Defendants Dr. Scott, NaphCare, Dr. Eskew, YesCare, Warden Norris, and Ms. Curry:

- denial of medical care—failure to treat his gastrointestinal condition—in violation of the Eighth Amendment;
- denial of an adequate diet, in violation of the Eighth Amendment;
- retaliation based on the open letter, in violation of the First Amendment; and
- violation of Wyoming criminal law.

**7. Restoration of FODMAP Diet**

On March 26, while his complaint was still in the mail, Mr. Harrell was unexpectedly transported for an appointment with a gastrointestinal surgeon. The surgeon explained what would happen at an upcoming colonoscopy and asked the DOC to reinstate the FODMAP diet at least until the colonoscopy. Later that day, after returning from the doctor visit, Mr. Harrell met with a dietitian who ordered that he receive only the foods he knows he can eat, including double portions to address the weight loss. The kitchen then began serving him the FODMAP diet again. Mr. Harrell quickly sent a "notice of full disclosure" to the district court, describing these developments. R. at 85.

**B. *Proposed Amended Complaint***

In mid-May 2025, before the district court had acted on Mr. Harrell's original complaint (other than minor procedural orders), Mr. Harrell submitted a motion to amend and a proposed amended complaint, which would add six defendants.

It alleged that Dr. Church; "RN (unknown) Wyse," a NaphCare nurse who worked as "the Facility Health Service Administrator" at Wyoming Medium, Suppl. R. at 10, ¶ 10 (emphasis removed); and Director Shannon (1) could have addressed Mr. Harrell's nutrition or medical needs but did not or (2) retaliated against him for his open letter.

The proposed amended complaint named Zachary Hiegel, another kitchen supervisor at Wyoming Medium. It alleged that, on November 22, 2024, Mr. Harrell received a dinner tray with fried cabbage and ham. He cannot eat cabbage and felt uncomfortable eating around it due to

> cross-contamination. He asked Mr. Hiegel for a replacement meal. Mr. Hiegel responded that Mr. Harrell was "'shit outta luck' because 'all the cooks just left.'" Suppl. R. at 44, ¶ 113. Mr. Harrell's diet sheet, posted in the kitchen, "specifically said 'no cabbage.'" *Id.* at 52, ¶ 137. Mr. Harrell "pointed to his diet sheet and said, '[O]bviously you can't fucking read.'" *Id.* at 45, ¶ 115. Mr. Hiegel issued a CVR against Mr. Harrell for violating a prison regulation forbidding profanity directed at another. Mr. Harrell was convicted of the CVR and fined $10.
>
> The proposed amended complaint also named Robert Babbitt, a lieutenant at Wyoming Medium. It alleged that on January 30, 2025, a prison nurse gave Mr. Harrell four stool sample cups and asked that they be returned as soon as possible for testing. He delivered the first sample to the medical department on February 1. He returned on February 2 to deliver the second sample. Lieutenant Babbitt was on duty. He would not let Mr. Harrell enter and refused Mr. Harrell's request to have a nurse come out to the hallway to retrieve the sample. Mr. Harrell "left the sample cup in a biohazard bag outside the medical door for a nurse to retrieve later." *Id.* at 29, ¶ 65. Later that day, Mr. Harrell was served with a CVR filed by Lieutenant Babbitt, claiming Mr. Harrell had threatened to throw the sample on the floor and had no permission to be near medical at that time. *Id.* at 30, ¶ 66. The prison acquitted Mr. Harrell based on security camera footage of the incident. Mr. Harrell claims that Lieutenant Babbitt's CVR was retaliation for exercise of his Eighth Amendment right to seek medical care.
>
> Finally, the proposed amended complaint named the DOC as a defendant, claiming the prison regulation about profanity violates the First Amendment and that its application to him was conscience-shocking in violation of substantive due process. Mr. Harrell also alleged that the DOC "implements a policy statement and decision in every grievance filed against its hired for-profit medical companies that says they trust the expertise of them," *id.* at 69, ¶ 179, so the DOC was liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for YesCare's and NaphCare's constitutionally inadequate medical care.

[ECF No. 30-1].

The Tenth Circuit remanded the case only as to the claims against Dr. Scott and Ms. Curry. Specifically, the Tenth Circuit stated:

> *a. Dr. Scott*
>
> Mr. Harrell alleges that after he talked for 90 minutes about his needs with Dr. Scott and Dr. Church on January 8, 2025, and, after distributing his

> open letter, Dr. Scott took him off the FODMAP diet, substituted a gluten-free diet, and then took him off the gluten-free diet in March 2025. Mr. Harrell adequately pled Dr. Scott's knowledge that gluten was among the foods he cannot eat and disregarded his dietary needs by taking him off the gluten-free diet.
>
> On the retaliation claim, the amended complaint points to Dr. Scott's response to the open letter: "Your FODMAP diet is being discontinued. Your draft of Civil Rights Complaint was reviewed," R. at 73, which, combined with the March 2025 removal from the gluten-free diet, permits a reasonable inference that Dr. Scott acted with a retaliatory motive.
>
> Mr. Harrell has adequately pled his nutrition/medical care deliberate indifference claim and retaliation claim against Dr. Scott.
>
> *f. Ms. Curry*
>
> Mr. Harrell alleges that, from February 2024, when Dr. Eskew put Mr. Harrell on the FODMAP diet, through January 2025, when Dr. Scott ended that diet, kitchen supervisor Curry knowingly served him food outside his prescribed diet, was unwilling to substitute for those foods, and forbade him from asking the cooks to substitute foods. She allegedly did this despite many conversations with and written communications from Mr. Harrell about his dietary problems, including her statement to him in October 2024 that she would not serve foods to Mr. Harrell that caused him pain. This plausibly alleges a deliberately indifferent denial of nutritional care.
>
> Mr. Harrell fails to state a claim against Ms. Curry for retaliation because he does not allege she knew about the open letter and, in any event, Dr. Scott made the decision to end the FODMAP diet.

[ECF No. 30-1].

<u>*Motion for Restraining Order and Permanent Injunction*</u>

Plaintiff filed a Combined Motion for Restraining Order and Permanent Injunction. Plaintiff specifically asks that the Court order he be immediately and permanently returned to his FODMAP diet, that he be provided double portions at every meal until his weight returns to 180–190 pounds, that he immediately and permanently be provided a fourth meal every day or a snack, and that he be immediately and permanently allowed to order canteen from approved vendors.

## RELEVANT LAW

Preliminary injunctions "preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The decision to grant or deny a preliminary injunction is reserved to the sound discretion of the trial court. *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 773 (10th Cir. 2011). Entering a preliminary injunction is an extraordinary remedy that is not awarded as of right. *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138–39 (D.N.M. 2018) (citing 13 JAMES WM MOORE, MOORE'S FEDERAL PRACTICE ¶ 65.36 (3d ed. 2014)); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, courts are required to balance the competing claims of the injury while considering the effect of granting or denying the motion upon each party. *Id.* In doing so, courts utilize a four-prong test to determine if a party is entitled to a preliminary injunction. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019).

First, the moving party must show a substantial likelihood of success on the merits. *Id.* Second, the movant would suffer irreparable injury if the motion is denied. *Id.* Third, the threatened injury outweighs the opposing party's injury if the injunction is granted. *Id.* Last, it must show that granting the injunction is not contrary to public interest. *Id.* Public consequences of granting the extraordinary relief are particularly important for the court's consideration. *Winter*, 555 U.S. at 24. The consideration of these elements rests within a district court's discretion and is only overturned for an abuse of that discretion. *Free the Nipple-Fort Collins*, 916 F.3d at 796. "A district court's decision crosses the abuse-of-

discretion line if it rests on an erroneous legal conclusion or lacks a rational basis in the record." *Id.* Factual findings are reviewed for clear error, and legal conclusions are reviewed de novo. *Id.* at 796–97. In addition to the four elements addressed above, a movant seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

After the U.S. Supreme Court's decision in *Winter*, there is no longer a modified burden for the first prong if the other three elements tip strongly in the movant's favor. 555 U.S. at 22; *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016). Additionally, the Tenth Circuit has recognized "three types of specifically disfavored preliminary injunctions." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd sub. nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *Free the Nipple-Fort Collins*, 916 F.3d at 797. Those types are "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 976. Preliminary injunctions that fall into one of these categories are subject to a heightened burden. *Id*. That heightened burden requires "a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id*.; *Free the Nipple-Fort Collins*, 916 F.3d at 797.

Next, "the requirements for obtaining a permanent injunction are 'remarkably similar' to those for obtaining a preliminary injunction." *Ute Indian Tribe of the Uintah &*

*Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)). Elements 2, 3, and 4 consisting of irreparable harm, balance of harms, and public interest are the same. *Id*. "The only measurable difference between the two is that a permanent injunction requires showing *actual success* on the merits, whereas a preliminary injunction requires showing a *substantial likelihood of success* on the merits." *Id*. (emphasis in original).

**RULING OF THE COURT**

Plaintiff is seeking injunctive relief via a Court order requiring the Wyoming Department of Corrections to: immediately and permanently return Plaintiff to his FODMAP diet through the WDOC's kitchen; to provide Plaintiff with double portions from the kitchen at every meal until his weight returns to 180 pounds; to immediately and permanently provide Plaintiff a fourth meal a day or a snack so he can properly take his medication that needs to be taken with food four times a day; and to immediately and permanently allow Plaintiff to order canteen from an approved vendor that sells foods that complies with his medical condition. [ECF No. 28, ¶¶ 11–14].

Plaintiff's request for a permanent injunction must be denied as premature. In assessing the necessary elements, entry of permanent injunction is appropriate only after a plaintiff succeeds on the actual merits of the case. *Ute Indian Tribe of the Uintah & Ouray* Rsrv., 22 F.4th at 908. Plaintiff "can only succeed on the merits of this case if he obtains summary judgment or a favorable outcome at trial." *Smith v. Briesacher*, No. 26-CV-036-JFH, 2026 WL 384934, at *3 (E.D. Okla. Feb. 11, 2026). "Because Plaintiff has not yet

obtained summary judgment or a favorable outcome at trial" he is not entitled to a permanent injunction, and his Motion is denied as premature. *Id*.

Next, Plaintiff's motion for injunctive relief must be denied even when construing his motion as a request for a preliminary injunction. Plaintiff is seeking a mandatory preliminary injunction, or one where the nonmoving party is required to take affirmative actions. *Little*, 607 F.3d at 1251. Consequently, Plaintiff's request is an extraordinary remedy, is disfavored, and is subject to a heightened burden. *Id*.; *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975; *Free the Nipple-Fort Collins*, 916 F.3d at 797.

Plaintiff's request for a temporary restraining order must be denied because Plaintiff fails to establish the necessary relationship between the injuries claimed in the request for injunctive relief and those remaining at issue after remand from the Tenth Circuit. "When seeking an injunction, the movant must establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the Complaint.'" *Johnson v. Clark*, No. 2:16-CV-00225-SWS, 2017 WL 11717893, at *8 (D. Wyo. Aug. 25, 2017) (quoting *Little*, 607 F.3d at 1251).

As stated above, only Plaintiff's claim of deliberate indifference against Ms. Curry and claims of deliberate indifference and retaliation against Dr. Scott remain.[1] The remaining allegations against Dr. Scott are based directly on the allegation that on January 8, 2025, shortly after Plaintiff distributed his open letter, that Dr. Scott took Plaintiff off

---

[1] Plaintiff's Motion [ECF No. 28] and Response [ECF No. 50] state that Plaintiff anticipates moving to amend his Complaint after he has sufficiently exhausted his administrative remedies. Plaintiff's asserted intention to amend after exhausting administrative remedies will not be considered by the Court in addressing the present motion.

the FODMAP diet. [ECF No. 35-1, at 17]. After Plaintiff was taken off the FODMAP diet he alleges Dr. Scott ordered a gluten-free diet as a substitute, and that he was taken off the gluten-free diet in March of 2025, again by Dr. Scott. *Id*. Plaintiff's remaining claim against Ms. Curry is based on her alleged refusal to provide Plaintiff with prescribed FODMAP food from February of 2024 through January of 2025, when Dr. Scott ended Plaintiff's FODMAP diet. *Id*. at 19.

However, Plaintiff was transferred from the Wyoming Medium Correctional Institution to the Wyoming State Penitentiary ("WSP") on October 22, 2025. [ECF No. 28, at 6]. Plaintiff claims that his FODMAP diet was immediately reinstated upon his arrival at WSP by Dr. Susanne Levene. *Id*. Plaintiff then alleges that on February 5, 2026, Dr. Levene again removed him from his FODMAP diet. *Id*. Plaintiff's assertions against Dr. Levene and further removal of his FODMAP diet at a separate facility are not sufficiently connected to the remaining claims. "Though new assertions of misconduct might support additional claims against a defendant, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).

Further, "a defendant sued in his or her official capacity on a state-law claim for injunctive relief is protected by Eleventh Amendment immunity." *Klein v. Univ. of Kansas Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 1036 (1984)). Nevertheless, a plaintiff may seek injunctive relief against state employees sued in their official capacities, because "federal court[s]

may grant injunctive relief against a state official acting in his or her official capacity to remedy a continuing violation of federal law." *Id*. (citing *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994)). "Eleventh Amendment does not provide state employees with immunity if they are sued in their official capacities for injunctive relief." *Id*. (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)).

The ability to seek injunctive relief against a state official in their official capacity "is not without limitations." *Id*. (citing *Ex parte Young*, 209 U.S. 123, 156–60 (1908)). "In *Ex Parte Young*, the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment." *Id*. Again, Plaintiff is now housed at the WSP. Dr. Scott is no longer serving as NaphCare's Regional Medical Director and no longer has any authority to direct Plaintiff's medical or dietary care and has no ability to grant Plaintiff his requested relief. [ECF No. 49, at 2]. Similarly, Ms. Curry serves as the Food Services Manager at the Wyoming Medium Correction Institution and has no authority or ability with respect to the distribution of food at any other WDOC facility, including the WSP where Plaintiff is currently housed. [ECF No. 44, at 6]. Neither Dr. Scott nor Ms. Curry have the power or authority to provide Plaintiff with his requested relief.

## CONCLUSION

While the Eleventh Amendment does not provide defendants sued in their official capacities with immunity from injunctive relief, the two remaining Defendants do not have the power to perform the injunctive relief requested in order to overcome the jurisdictional

bar of the Eleventh Amendment. Consequently, Plaintiff's claims for injunctive relief against Dr. Scott and Ms. Curry as individual Defendants in their official capacities must be denied.

The findings and conclusions set forth herein do not constitute a determination on the merits but are findings made considering the requested injunctive relief.

**NOW, THEREFORE, IT IS ORDERED** Christopher D. Harrell's Combined Motion for Restraining Order and Permanent Injunction [ECF No. 28] is **DENIED**.

Dated this 31st day of August, 2026.

Kelly H. Rankin
United States District Judge