Kenneth Steely, Esq.
BLACKSTONE TRIAL LAW
1200 Corporate Drive, Suite 425
Birmingham, AL 35242
Telephone: (205) 482-5558
kenneth.steely@blackstonetrial.com
(Admitted Pro Hac Vice)

Christopher R. Jones, WSB# 7-4837
GORDON REES SCULLY MANSUKHANI, LLP
515 E. Ivinson, Suite 108
Laramie, WY 82070
Telephone: (307) 365-6741
Facsimile: (307) 222-7825
crjones@grsm.com
(Local Counsel)

**Counsel for Defendant Jeffrey Scott, D.O.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CHRISTOPHER D. HARRELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY SCOTT, et al.,<br><br>Defendants. | Civil No. 2:25-cv-00086-KHR<br><br>**BRIEF IN SUPPORT OF DEFENDANT JEFFREY SCOTT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case presents a single question at this stage: whether Defendant Jeffrey Scott, D.O. ("Dr. Scott") is entitled to dismissal, or in the alternative summary judgment, on the two claims that survive against him on remand: 1) Eighth Amendment deliberate indifference and 2) First Amendment retaliation. He is, on multiple independent grounds. First, Plaintiff's own operative pleading admits that his final-level administrative appeal on the grievance underlying these claims was still pending, undecided, when he filed this action — a fatal defect under the Prison Litigation

Reform Act that requires dismissal without regard to the merits. Second, Dr. Scott has not served as NaphCare's Regional Medical Director, and has had no authority over Plaintiff's medical or dietary care, since July 1, 2026, mooting Plaintiff's official-capacity claims for prospective relief.[1] Third, and in the alternative, the undisputed medical record shows that Dr. Scott provided extensive, responsive, and clinically documented care, and that every dietary decision he made rested on an articulated medical rationale independent of Plaintiff's protected grievance activity. A prisoner's disagreement with the course of treatment he received, however strongly felt, is not deliberate indifference, and a documented clinical timeline that predates the protected activity by weeks defeats an inference of retaliatory motive. The Court should grant the relief requested.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiff Christopher D. Harrell, a Wyoming state prisoner proceeding pro se, filed this action on March 27, 2025, and moved to amend his complaint on May 14, 2025. ECF Nos. 1, 11. The Court screened both pleadings together under 28 U.S.C. § 1915A(b)(1), dismissed all claims, and denied leave to amend as futile. ECF No. 12. Plaintiff appealed. The Tenth Circuit affirmed in part and reversed in part, holding that Plaintiff plausibly alleged Eighth Amendment deliberate indifference and First Amendment retaliation against Dr. Scott, and deliberate indifference against co-defendant Edna Curry, and otherwise affirming dismissal of every claim against every other defendant. ECF No. 30 at 16–25. The mandate issued June 22, 2026. ECF No. 32. Dr. Scott waived

[1] Dr. Scott identified a typographical error in his first declaration. (Doc. 49-1). In his declaration, he stated that as of June 1, 2026, he was no longer serving as the Regional Medical Director for NaphCare for the Wyoming Department of Corrections. (Doc. 49-1, ¶¶ 1, 36). The correct date should have been **July 1, 2026**. Second Declaration of Dr. Scott, attached hereto as Exhibit D.

service on August 19, 2026, following a Notice of Lawsuit and Request for Waiver sent July 21, 2026. ECF Nos. 48, 52, 56.

While the appeal was pending and following remand, Plaintiff separately moved for a temporary restraining order and permanent injunction seeking, among other things, immediate and permanent restoration to a FODMAP diet. ECF No. 28. This Court denied that motion on August 31, 2026, finding, as relevant here, that Dr. Scott "is no longer serving as NaphCare's Regional Medical Director and no longer has any authority to direct Plaintiff's medical or dietary care," and that Plaintiff's more recent allegations concerning a different facility and a different provider were "not sufficiently connected" to the claims remaining in this action. ECF No. 58 at 13–14.

### B. Dr. Scott's Care of Mr. Harrell

Dr. Scott began personally treating Mr. Harrell on November 14, 2024, for chronic diarrhea, ordering a full diagnostic work-up and continuing an existing FODMAP diet pending results. Decl. of Jeffrey L. Scott, D.O., ECF No. 49-1, ¶ 4; Excerpts from Mr. Harrell's Medical Records, attached here to as Exhibit A at 5-7. Stool studies collected December 6, 2024 returned normal; Dr. Scott documented and communicated those results, and started a trial of Creon based on a plausible alternative diagnosis. ECF No. 49-1, ¶¶ 5–6; Ex. A at 28-29, 7. On January 8, 2025, Dr. Scott and Dr. James Church met with Mr. Harrell for approximately ninety minutes, explained that a FODMAP diet is a short-term, two-to-six-week diagnostic tool rather than a permanent diet, and discussed a stepped treatment plan. ECF No. 49-1 ¶ 10; ECF No. 30 at 3–4, 17; Ex. A at 9-10. On January 28–29, 2025, after reviewing Mr. Harrell's chart, Dr. Scott discontinued the FODMAP diet — which by then had been in place approximately nine months without objective benefit — and ordered a gluten-free diet, based on Mr. Harrell's own written identification of gluten as his primary problem food and his continuing weight loss. ECF No. 49-1, ¶¶ 12–13; Ex. A at 2, 11. Dr. Scott's declaration states plainly that this decision "was not made in response to, or in retaliation

for, any grievance, complaint, or communication by Mr. Harrell." ECF No. 49-1 ¶ 13. The medical record independently confirms both diet orders were entered under Dr. Scott's name on January 29, 2025. Ex. A at 2.

Dr. Scott continued to treat Mr. Harrell through March 2025: ordering repeat labs after further complaints in late February, obtaining a corporate second-opinion consultation, and arranging the outside gastroenterology and surgical evaluations Mr. Harrell attended on March 18 and March 26, 2025. ECF No. 49-1, ¶¶ 14, 18–19, 22; Ex. A at 13-17, 20. On March 21, 2025, given continued weight loss and the absence of objective findings supporting further dietary restriction, Mr. Harrell was placed on a regular diet; five days later, after the outside surgeon indicated no objection to resuming FODMAP pending further data, a FODMAP diet was reinstated through a multidisciplinary decision involving Dr. Church, a registered dietitian, and the food-service manager. ECF No. 49-1, ¶¶ 21–22; Ex. A at 3. Dr. Scott's direct, in-person treatment of Mr. Harrell ended at approximately that time; day-to-day care passed first to Dr. Church, then to Dr. Bishop, and, after Mr. Harrell's October 22, 2025 transfer to the Wyoming State Penitentiary, to Dr. Susanne Levene — a different provider at a different facility with no connection to Dr. Scott. ECF No. 49-1, ¶¶ 24, 28. Dr. Scott has not served as NaphCare's Regional Medical Director, held any NaphCare office, or had any authority over Mr. Harrell's care, since July 1, 2026. ECF No. 49-1, ¶¶ 1, 36; Ex. D at 3.

### C. Administrative Exhaustion History

The claims Plaintiff now presses against Dr. Scott — removal from the FODMAP diet, the substitute gluten-free diet, and retaliatory motive tied to his January 13, 2025 open letter — were the subject of Grievance #25-037. Grievance Manager Jennifer Emigh denied the grievance at the facility level on February 12, 2025, finding Plaintiff's weekly weights, as monitored by medical, staff resulted in a BMI in the normal range and noting Plaintiff's own canteen purchases were

inconsistent with his stated food sensitivities. Harrell Grievance #25-037 at 12-13, attached hereto as Exhibit B. Warden Seth Norris denied Plaintiff's first-level appeal on February 27, 2025. *Id.* at 8-9. Plaintiff appealed to the Department Director on WDOC Form #322 dated March 4, 2025 — an appeal the Director's office acknowledged receiving on March 10, 2025, advising that a response would issue within the Department's thirty-day time frame. *Id.* at 4, 5-7.

Plaintiff mailed his Complaint on or about March 24–25, 2025 — while that Director-level appeal remained pending. ECF No. 1 ¶¶ 105–108 & n.15. Plaintiff's own pleading admits as much: "[Plaintiff] has filed the final appeal to the Director and is awaiting a response; however, due to the emergent nature of this request, [Plaintiff] is requesting the court to file this action and serve the defendants ... and hold the rest of the matter in abeyance pending the resolution of grievance #25-037." *Id.* n.15. Nearly two weeks *after* the Complaint was filed, Director Daniel Shannon issued his decision on Grievance #25-037 on April 7, 2025, finding the grievance "resolved". Ex. B at 2-3. The related Grievance #25-028, concerning kitchen implementation of Mr. Harrell's diet during the same period, was likewise not decided until April 3, 2025, also after suit was filed. Harrell Grievance #25-028 at 2-3, attached hereto as Exhibit C.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to D. Wyo. Local Rule 7.1(b)(2)(D), Dr. Scott submits the following statement of the material facts as to which no genuine issue exists:

**1.** Plaintiff Christopher D. Harrell is a Wyoming state prisoner; he is a convicted inmate, not a pretrial detainee. ECF No. 1 caption; ECF No. 30 at 1.

**2.** Dr. Scott began personally treating Mr. Harrell on November 14, 2024, and ordered a diagnostic work-up for chronic diarrhea, continuing an existing FODMAP diet pending results. ECF No. 49-1, ¶ 4; Ex. A 5-7.

**3.** Stool studies collected December 6, 2024 returned normal, including a fecal calprotectin within the normal reference range. Dr. Scott documented and communicated the results to Mr. Harrell. ECF No. 49-1, ¶ 5; Ex. A 28-29.

**4.** On January 8, 2025, Dr. Scott and Dr. James Church met with Mr. Harrell for approximately ninety minutes and explained that a FODMAP diet is medically indicated as a short-term elimination diet, generally two to six weeks, used to identify problem foods rather than as a permanent diet. ECF No. 49-1, ¶ 10; Ex. A at 9-10.

**5.** Mr. Harrell's open letter, the protected activity underlying his retaliation claim, is dated January 13, 2025 — five days after Dr. Scott's in-person explanation that FODMAP is a short-term diagnostic diet. ECF No. 30 at 4–5; ECF No. 49-1, ¶ 10.

**6.** On January 28–29, 2025, Dr. Scott reviewed Mr. Harrell's chart, discontinued the FODMAP diet after approximately nine months of use without objective benefit, and ordered a gluten-free diet based on Mr. Harrell's own written identification of gluten as his primary problem food and his continuing weight loss. ECF No. 49-1, ¶¶ 12–13; Ex. A at 2, 11.

**7.** The FODMAP-to-gluten-free diet change was entered in the medical record under Dr. Scott's name effective January 29, 2025. Ex. A at 2.

**8.** Dr. Scott's declaration states that the January 29, 2025 decision "was not made in response to, or in retaliation for, any grievance, complaint, or communication by Mr. Harrell." ECF No. 49-1, ¶ 13.

**9.** Mr. Harrell received Dr. Scott's written response to the open letter on January 31, 2025, explaining that FODMAP "is not intended to be a long-term diet" and is "used for 2-6 week[s] to identify irritating foods," and that he would be placed on a gluten-free diet. ECF No. 30 at 6; ECF No. 58 at 5.

**10.** Dr. Scott ordered repeat labs on February 26, 2025 in response to further complaints, and obtained a corporate second-opinion consultation on March 13, 2025 confirming no evidence of malnutrition. ECF No. 49-1, ¶¶ 14, 18; Ex. A at 12, 13-15.

**11.** Mr. Harrell was evaluated by an outside gastroenterology provider on March 18, 2025 and by an outside surgeon on March 26, 2025, both arranged in connection with Dr. Scott's care. ECF No. 49-1, ¶¶ 19, 22; Ex. A at 16.

**12.** On March 21, 2025, given continued weight loss and the absence of objective findings supporting further dietary restriction, Mr. Harrell was placed on a regular diet. ECF No. 49-1, ¶ 21; Ex. A at 3.

**13.** On March 26, 2025, following the outside surgical evaluation, a FODMAP diet order was reinstated through a multidisciplinary decision involving Dr. Church, a registered dietitian, and the food-service manager, using a food list Mr. Harrell provided. ECF No. 49-1, ¶ 22; Ex. A at 3.

**14.** Dr. Scott's direct, in-person clinical involvement with Mr. Harrell ended at approximately this time; day-to-day care passed to Dr. Church and then, by approximately May 2025, to Dr. Bishop. ECF No. 49-1, ¶ 24.

**15.** Mr. Harrell was transferred to the Wyoming State Penitentiary on October 22, 2025, after which his care passed to Dr. Susanne Levene, a provider with no connection to Dr. Scott. ECF No. 49-1, ¶¶ 24, 28; ECF No. 58 at 13; ECF No. 28 ¶ 6(l).

**16.** Dr. Levene discontinued Mr. Harrell's FODMAP diet on February 5, 2026 — more than ten months after Dr. Scott's last diet order and at a different facility. ECF No. 49-1, ¶ 28; ECF No. 58 at 13; Ex. A at 4.

**17.** Dr. Scott has not served as NaphCare's Regional Medical Director, held a NaphCare office, provided any medical services to Mr. Harrell or any WDOC inmate, or had any authority over Mr. Harrell's medical or dietary care, since July 1, 2026. ECF No. 49-1, ¶¶ 1, 36; Ex. D.

**18.** Multiple providers who treated Mr. Harrell after Dr. Scott's direct involvement ended reached conclusions consistent with Dr. Scott's own clinical judgment, including repeated negative celiac and standard allergy testing and a June 2026 pathology finding that FODMAP use or discontinuation does not cause the mucosal or rectal findings later identified. ECF No. 49-1, ¶¶ 25–32, 35; Ex. A at 3-4, 19-20, 21, 22, 23, 24-26.

**19.** The claims against Dr. Scott arising from the FODMAP/gluten-free diet decisions and the alleged retaliatory motive were the subject of Grievance #25-037. Ex. B at 12-13.

**20.** The Grievance Manager denied Grievance #25-037 at the facility level on February 12, 2025. Ex B at 12-13.

**21.** Warden Seth Norris denied Mr. Harrell's first-level appeal of Grievance #25-037 on February 27, 2025. Ex. B at 8-9.

**22.** Mr. Harrell submitted his appeal to the WDOC Director on Form #322 dated March 4, 2025. Ex. B at 5-7.

**23.** The Director's office acknowledged receipt of that appeal on March 10, 2025 and advised that a response would issue within the Department's thirty-day time frame — i.e., on or before approximately April 9, 2025. Ex. B at 4.

**24.** Mr. Harrell mailed the Complaint commencing this action on or about March 24–25, 2025. ECF No. 1 at 35 (certificate of service).

**25.** Mr. Harrell's own Complaint admits that his final-level Director appeal on Grievance #25-037 was still pending, and that he was "awaiting a response," when he filed suit. ECF No. 1 ¶ 106 & n.15.

**26.** Director Daniel Shannon did not issue a decision on Grievance #25-037 until April 7, 2025 — after the Complaint was filed — at which point he found the grievance "resolved." Ex. B at 2-3.

**27.** The related Grievance #25-028, concerning kitchen implementation of Mr. Harrell's diet during the same period, was not decided by the Director until April 3, 2025, also after suit was filed. Ex. C at 2-3.

**28.** Mr. Harrell sues Dr. Scott in both his official capacity, for prospective injunctive and declaratory relief, and his individual capacity, for damages. ECF No. 11-1 ¶ 2.

## IV. STANDARDS OF REVIEW

### A. RULE 12(B)(6) AND RULE 12(B)(1)

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted, including where an affirmative defense is apparent from the face of the pleading itself. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (exhaustion is an affirmative defense, but dismissal on the pleadings is proper where non-exhaustion is clear from the complaint). A motion under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject-matter jurisdiction, including whether a claim for prospective relief remains live; the Court may consider evidence outside the pleadings on such a challenge without converting the motion to one for summary judgment. *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

### B. RULE 12(D) AND RULE 56(A)

If, on a Rule 12(b)(6) motion, matters outside the pleadings are presented and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56, with all

parties given a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d). Summary judgment is warranted where the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Dr. Scott submits this Motion in the alternative for exactly that reason: the deliberate-indifference and retaliation arguments in Parts V.C and V.D below rest on the Scott Declaration and the medical record, matters outside the four corners of the pleadings, and matters which present no genuine dispute as the facts.

## V. ARGUMENT

### A. EVERY CLAIM AGAINST DR. SCOTT MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE FILING SUIT

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) must be "proper" — completed through the prison's own grievance procedure, on its own terms. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brough in court." *Jones*, 549 U.S. at 212. The contours of what exhaustion requires are defined by the prison's own procedural rules, not by the PLRA. *Id.* at 218. A prisoner is relieved of the exhaustion requirement only where administrative remedies were not, in fact, "available" to him — for example, where the process operates as a simple dead end, is so opaque that no ordinary prisoner could use it, or where officials thwart use of the process through intimidation. *Ross v. Blake*, 578 U.S. 632, 642–44 (2016). None of those circumstances is present here — to the contrary, the undisputed record shows the grievance process worked exactly as designed, reaching a final decision just two weeks after Plaintiff elected not to wait for it.

Plaintiff's own pleading resolves this issue. WDOC's grievance procedure requires, in sequence, a face-to-face conversation, an inmate communication form, an inmate grievance form, an appeal to the Warden or facility CEO, and a final appeal to the WDOC Director. ECF No. 1 ¶ 105. The claims Plaintiff now presses against Dr. Scott were the subject of Grievance #25-037, which followed that sequence: denial at the facility level on February 12, 2025; denial by Warden Norris on February 27, 2025; and Plaintiff's appeal to the Director, received March 10, 2025, with a response due within thirty days. Statement of Undisputed Material Facts ("SUMF") ¶¶ 19–23. Plaintiff mailed his Complaint on or about March 24–25, 2025 — before the Director responded — and his own pleading says so: he "has filed the final appeal to the Director and is awaiting a response," and asks the court to "hold the rest of the matter in abeyance pending the resolution of grievance #25-037." ECF No. 1 ¶ 106 & n.15; SUMF ¶¶ 24–25. The Director did not decide Grievance #25-037 until April 7, 2025, after suit was already filed. SUMF ¶ 26.

This is not an inference drawn from an ambiguous administrative record; it is an admission in the operative pleading, corroborated by the grievance file itself. Under *Woodford*, the pendency of that appeal at the time of filing is fatal regardless of how the appeal was eventually decided, and regardless of the emergency label Plaintiff attached to his request. 548 U.S. at 95 (rejecting a substantial compliance or partial-exhaustion standard). Nor can Plaintiff claim the process was "unavailable" under *Ross*: the same record shows the process was actively functioning — producing responses at every level, on schedule, through a final decision that expressly addressed the merits of his diet and weight-loss complaints. 578 U.S. at 643–44; SUMF ¶¶ 19–26. Because the claims against Dr. Scott are indistinguishable, for exhaustion purposes, from the FODMAP/retaliation claim resolved in Grievance #25-037, the entire action against Dr. Scott should be dismissed under Rule 12(b)(6) without reaching the merits.

### B. PLAINTIFF'S OFFICIAL-CAPACITY CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF AGAINST DR. SCOTT ARE MOOT

A plaintiff may sue a state official in his official capacity for prospective injunctive relief only where that official retains the power to perform the act required to remedy the alleged violation. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Klein v. Univ. of Kansas Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (official-capacity injunctive relief unavailable where the official lacks authority to grant it). Where intervening events deprive the official of that authority, a claim for prospective relief against him becomes moot. *Id.*

This Court has already found, on this same record, that "Dr. Scott is no longer serving as NaphCare's Regional Medical Director and no longer has any authority to direct Plaintiff's medical or dietary care." ECF No. 58 at 14. Dr. Scott's declaration confirms the point in full: he has not held that role, maintained a NaphCare office, treated Mr. Harrell, or had any authority over any WDOC inmate's diet, since July 1, 2026. ECF No. 49-1, ¶¶ 1, 36; Ex. D a 3; SUMF ¶ 17. Mr. Harrell, moreover, is no longer even housed at the facility where Dr. Scott worked; he was transferred to the Wyoming State Penitentiary on October 22, 2025, and his diet has since been managed by an entirely different provider. SUMF ¶¶ 15–16. Whatever prospective relief this Court could enter regarding Mr. Harrell's current diet, Dr. Scott has no power to carry it out. His official-capacity claims for injunctive and declaratory relief against Dr. Scott should therefore be dismissed as moot, leaving only the individual-capacity damages claims addressed below.

### C. IN THE ALTERNATIVE, DR. SCOTT IS ENTITLED TO SUMMARY JUDGMENT ON THE EIGHTH AMENDMENT DELIBERATE-INDIFFERENCE CLAIM

#### 1. Legal standard.

The Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A deliberate-indifference claim has an objective and a subjective component. *Id.* at

834. The objective component asks whether the medical need was "sufficiently serious" — diagnosed by a physician as mandating treatment, or so obvious a lay person would recognize the need for care. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Upoff*, 199F.3d 1220, 1224 (10th Cir. 1999)). The subjective component asks whether the defendant actually knew of and consciously disregarded an excessive risk to the inmate's health — more than negligence, and more than even a wrong diagnosis or a poor outcome. *Farmer*, 511 U.S. at 837; *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim"). The plaintiff must also show factual, but-for causation between the defendant's conduct and the alleged injury. *Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000). A prisoner's right is to reasonable medical care, not to the specific treatment he would prefer, and a difference of opinion between an inmate and his medical provider over the appropriate course of treatment — including how long a diagnostic diet should be used — does not, by itself, violate the Eighth Amendment. *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

**2. The undisputed record forecloses the subjective component.**

Dr. Scott does not dispute, for purposes of this Motion, that Plaintiff's gastrointestinal condition and documented weight loss satisfy the objective component of a serious medical condition. *See* ECF No. 30 at 16. The undisputed record, however, forecloses the subjective component and causation. Far from disregarding a known risk, Dr. Scott ordered a full diagnostic work-up at intake, obtained repeated normal lab and stool studies, tried and adjusted medications, held an extended in-person visit to explain his reasoning, obtained a corporate second opinion, and arranged both a gastroenterology and a surgical evaluation — all before his direct involvement in Mr. Harrell's care ended in March 2025. SUMF ¶¶ 2–13. Every dietary decision he made had a stated clinical basis: the FODMAP-to-gluten-free change followed nine months of use without

objective benefit, Plaintiff's own written identification of gluten as his primary trigger, and continuing weight loss; the subsequent move to a regular diet followed continued weight loss despite that accommodation; and the FODMAP reinstatement followed an outside surgeon's evaluation and a multidisciplinary care-team decision. SUMF ¶¶ 6, 12–13. Dr. Scott's declaration states directly that none of these decisions were made in response to any grievance or complaint. SUMF ¶ 8.

That clinical judgment is independently corroborated. After Dr. Scott's direct involvement ended, other providers repeatedly reached the same conclusion on more complete data — negative celiac serology on two occasions, negative standard allergy testing, gastroenterology recommendations against indefinite FODMAP use, and, as recently as June 2026, an endoscopic and pathology finding that FODMAP use or discontinuation does not cause the mucosal or rectal findings later identified. SUMF ¶ 18. This is not Dr. Scott's own after-the-fact justification; it is the independent, converging judgment of multiple subsequent treating providers, which forecloses any reasonable inference that Dr. Scott's stated clinical rationale was pretextual or that he consciously disregarded Plaintiff's health. On this record, Plaintiff can show, at most, a disagreement with the length of time an elimination diet should be used — precisely the kind of dispute *Perkins* holds is not deliberate indifference. Dr. Scott is entitled to summary judgment on this claim.

### D. In the Alternative, Dr. Scott Is Entitled to Summary Judgment on the First Amendment Retaliation Claim

#### 1. Legal standard.

A First Amendment retaliation claim requires the Plaintiff to show (1) he engaged in constitutionally protected activity; (2) the defendant's action caused "'an injury that would chill a person of ordinary firmness from continuing to engage in that activity'"; and (3) the defendant's

adverse action was "'substantially motivated" as a response to the protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quoting *Lackey v. County of Bernalillo*, 1999 U.S. App. LEXIS 75*, *11(10th Cir. 1999)); *Parkhurst v. Shannon*, 172 F.4th 1176, 1182 (10th Cir. 2026). Even where protected conduct is a but-for cause of an adverse action in a mixed-motive sense, a defendant defeats liability by showing the same action would have been taken for a legitimate reason regardless of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also, Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (summary judgment affirmed where employer submitted undisputed evidence that employee would have been terminated regardless of the protected conduct). There is no vicarious liability under 42 U.S.C. § 1983; each defendant's own personal participation and causal connection to the alleged injury must be shown. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

**2. The undisputed record rebuts any inference of retaliatory motive.**

Elements one and two are not contested for purposes of this Motion; the open letter was protected activity, and withdrawal of a diet Plaintiff considered necessary would chill a person of ordinary firmness. *See* ECF No. 30 at 16 n.10. The undisputed record forecloses the third element, motive.

The diet Plaintiff was removed from was, by its own express terms, time-limited, and Dr. Scott communicated that limitation before the protected activity occurred. Dr. Scott explained to Plaintiff, in person, on January 8, 2025 — five days before the open letter was even written — that a FODMAP diet is a short-term, two-to-six-week diagnostic tool, not a permanent diet, and that Plaintiff had by then used it for approximately seven months. SUMF ¶¶ 4–5. That pre-existing, documented clinical timeline is strong evidence that the discontinuation decision, made three weeks later, was independent of the open letter, not a reaction to it.

Nor did Dr. Scott simply terminate care in response to the letter: he substituted a tailored accommodation, a gluten-free diet targeting the specific food Plaintiff himself had identified in writing as his primary problem — a diet Plaintiff's own amended pleading concedes "eliminated gluten." ECF No. 11-1 ¶ 82; SUMF ¶ 6. A defendant who substitutes a targeted accommodation for the treatment a plaintiff claims to have lost, rather than terminating care outright, is not acting consistently with an intent to punish protected speech.

To the extent Plaintiff's claim rests on any subsequent removal from a diet, that conduct is not attributable to Dr. Scott. Dr. Scott's direct treatment of Plaintiff ended in approximately March 2025; care then passed to Dr. Church, then Dr. Bishop, and, after Plaintiff's October 2025 transfer to a different facility, to Dr. Levene. SUMF ¶¶ 14–15. The next FODMAP discontinuation of record occurred on February 5, 2026 — more than ten months after Dr. Scott's last diet order, at a different facility, by a different provider. SUMF ¶ 16. This Court has already held that conduct at Plaintiff's current facility, by a different provider, is "not sufficiently connected" to the claims remaining against Dr. Scott. ECF No. 58 at 13. Any attempt to attribute that later, different-provider conduct to Dr. Scott fails for want of personal participation and causation. *Serna*, 455 F.3d at 1151; *Jenkins*, 81 F.3d at 994.

Finally, as in the deliberate-indifference analysis above, the independent, converging judgment of multiple subsequent providers that indefinite FODMAP use was not medically supported is strong circumstantial evidence that Dr. Scott's stated clinical rationale was genuine, not pretextual. SUMF ¶ 18. On this record, temporal proximity between the open letter and the diet change is the only evidence of retaliatory motive Plaintiff can offer, and it is overcome as a matter of law by a documented clinical timeline that predates the letter, the substitution of a tailored accommodation rather than termination of care, and independent, subsequent medical

confirmation of the stated rationale. Under *Mt. Healthy*, Dr. Scott is entitled to summary judgment because the undisputed evidence shows he would have made the same clinical decision regardless of the open letter.

## VI. CONCLUSION

For the foregoing reasons, Dr. Scott respectfully requests that the Court dismiss all claims against him for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a); dismiss, or grant summary judgment on, Plaintiff's official-capacity claims for injunctive and declaratory relief as moot; and, in the alternative, grant summary judgment in Dr. Scott's favor on Plaintiff's Eighth Amendment deliberate-indifference claim and First Amendment retaliation claim.

Respectfully submitted this 21st day of September, 2026.

/s/ Kenneth Steely
Kenneth Steely, Esq.
BLACKSTONE TRIAL LAW
1200 Corporate Drive, Suite 425
Birmingham, AL 35242
(205) 482-5558
kenneth.steely@blackstonetrial.com
(Admitted Pro Hac Vice)

Christopher R. Jones, WSB# 7-4837
GORDON REES SCULLY
MANSUKHANI, LLP
(Local Counsel)

Counsel for Defendant Dr. Jeffrey Scott

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of September, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that a true and correct copy was served upon Plaintiff Christopher D. Harrell, WSP #26939, P.O. Box 400, Rawlins, Wyoming 82301, by United States mail, postage prepaid, at his address of record.

/s/ Kenneth Steely
Kenneth Steely