# EXHIBIT B

(Grievance #25-037)

THE STATE OF WYOMING

Department of Corrections

Mark Gordon
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7476

Daniel Shannon
Director

April 7, 2025

Christopher Harrell, #26939
Wyoming Medium Correctional Institute
7076 Road 55F
Torrington, WY 82240

RE: Grievance Appeal #25-037

Dear Mr. Harrell:

I am in receipt of Grievance Appeal #25-037 in which you appeal the decision of Warden Seth Norris regarding weight loss after being removed from the FODMAP diet. After reviewing the submitted documentation, I assigned Central Office staff to investigate.

In your appeal you state you weighed 171 pounds (lbs.) when weighed in medical February 28, 2025. You documented all the irritating and troublesome foods and the FODMAP diet should have changed to "Harrell's diet." Instead, you were told to self-select and not consume the troublesome foods. You lost 15 lbs. in the month of February and have not been placed on a diet where you can safely eat 2200-2800 calories a day. The remedy you seek is an MDT with NaphCares doctor, Warden Seth Norris, Kitchen Supervisor Edna Curry, the dietician, Canteen Manager, removal of irritating foods, ability to purchase canteen that does not have the irritating foods, see a gastroenterology (GI) specialist, and consult an allergy specialist to identify all food that irritate you.

Documentation in your medical record indicates Dr. Jeff Scott notified you January 29, 2025, your FODMAP diet was being discontinued as you indicated your biggest issue was gluten in your draft of Civil Rights Complaint. You were placed on a Gluten free diet and informed you had been referred to a GI doctor. Your documented weights were February 14, 2025, 179 lbs., February 28, 2025, 171 lbs. and March 21, 2025, 164 lbs. Review of your commissary purchases indicates you stopped purchasing pickles, olives, bacon jalapeno cheese sticks, jalapenos, meat sausage, refried beans, tortillas, chili ramen, white rice, chili, etc. around the beginning of February and have only purchased diet sodas and drink mixes since. Nutritional supplements including BOOST, Ensure and a vegan, dairy free, gluten free, low sugar nutritional supplement were offered until your specialist appointment and you refused.

You saw GI specialist McKenna Spillar, PA, March 18, 2025. Stool studies and labs were ordered based on her recommendations. The stool study indicates pancreatic insufficiency and Creon has been ordered. An EGD and colonoscopy have been re-scheduled.

An MDT was scheduled March 20, 2025. You declined to attend. You were interviewed by the dietician and kitchen supervisor March 26, 2025 and meal plans were discussed.

The Wyoming Department of Corrections (WDOC) relies on the expertise of qualified, licensed professionals to determine care and treatment. You have seen a GI specialist, spoke with the dietician and kitchen supervisor, been placed back on the FODMAP diet, and have agree to take medication prescribed by the specialist. I encourage you to work with medical and mental health staff, via the HSR process, for your medical and mental health needs. At this time, I find your grievance resolved.

Sincerely,

Daniel Shannon

Daniel Shannon
Director

DS/BAM/jy

c: Warden Seth Norris, WMCI
Jennifer Emigh, Grievance Manager, WMCI
Shawn Wyse, HSA-NaphCare, WMCI
Inmate File

THE STATE OF WYOMING

Mark Gordon
Governor

# Department of Corrections

1934 Wyott Drive
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7479

Daniel Shannon
Director

March 10, 2025

Chris Harrell, #26939
Wyoming Medium Correctional Institution
7076 Road 55 F
Torrington, Wyoming 82240

RE: Grievance Appeal

Dear Mr. Harrell:

Your appeal of grievance #25-037 was received by the Director's office on this date. A response to your appeal will be sent within the 30-day time frame in accordance with Section IV. E.3.iii.b(6)(f) of the Department of Corrections Inmate/Offender Communication and Grievance Procedure.

Sincerely,

JuDean Young

JuDean Young
Executive Assistant

cc: Warden Seth Norris
Grievance Manager-WMCI
Inmate File

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #322 | Page 1 of 2 |
| --- | --- | --- |
| | Inmate Grievance Appeal Form | Last Revised: 12/02/16 |

STATE OF WYOMING DEPARTMENT OF CORRECTIONS
MAR 10 2025
RECEIVED

# INMATE GRIEVANCE APPEAL FORM

**Grievance Directed to: (check one)**
☐ **Warden/CEO (First Appeal)**
☒ **WDOC Director (Second Appeal)**

Inmate Name: Harrell WDOC # 26939
Institution: MCI Unit/Cell: D4 103
Date: 3.4.25 Time: 0800 Grievance # 25-037

**Provide a clear, straightforward statement of the problem.**
**You may provide up to two (2) additional pages if necessary.**
**The appeal shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing an appeal.**

See all attached.

**Give a description and dates of your efforts to resolve the problem by talking to staff, completing an inmate communication form, and filing an inmate grievance. Include reason(s) why the result was not satisfactory.**

See all attached.

**Provide a clear statement of exactly what relief or remedy is expected.**

See all attached.

**Inmate Signature:** [signature]

**Administrative Use**

| Grievance Number: | |
| --- | --- |

**DESCRIPTION OF EVENT** (SECTION A – CONTINUED)

This is an appeal of Warden Norris' response dated February 27, 2025. In typical fashion, DOC staff will always defend each other at the cost of inmates' health and well-being. On February 28th, Mr. Harrell weighed 171 pounds on the scale in medical, which was documented by NaphCare's nurse.

Since Warden Norris chose to tell a bold-faced lie in his response "The purpose of this change was because WDOC policy only allows for certain diets to be ordered, FODMAP is not on the list." If that were true, how was Mr. Harrell on this diet for a year? Why is this diet listed in the book of diets in the kitchen? How have other inmates been on this same diet during the same time frames as Mr. Harrell? The problems Mr. Harrell had with the FODMAP diet is the kitchen could not/would not follow it. For example, Mr. Harrell repeatedly told kitchen/medical staff in writing that cabbage is something he cannot eat, yet see CVR #24.11.107, where it is documented that staff served Mr. Harrell cabbage again, and when Mr. Harrell complained about it, he was not given a meal replacement, but instead given this CVR that thankfully documented what Hiegel served to Mr. Harrell. Had WMCI kitchen staff followed the diet, Mr. Harrell would not have had anything to complain about would he? And he might weigh a few pounds more, but Mr. Harrell understands those are details DOC would rather not address.

After Mr. Harrell documented in writing all the "irritating" and "troublesome" foods, Mr. Harrell's diet should have changed names from FODMAP to Harrell's diet, yet it was not. It seems everyone involved herein is getting hung-up on the name FODMAP diet. Once this diet serves its purpose and the person identifies all the "irritating" and "troublesome" foods, FODMAP should change to a "way of life" instead of a 2-6 week diet; too bad anomaly sense did not kick-in here? Instead, NaphCare chose to add just about every single item back into Mr. Harrell's diet except gluten. This meant Mr. Harrell has to choose between pain or losing weight. Since Mr. Harrell lost 15 pounds during the month of February, it should be obvious what his choice is.

Everything FODMAP removed that Mr. Harrell was able to have added back into his diet without causing him pain, was added back. What are left are the "irritating" and "troublesome" foods. The diet Wyse attempted to offer to Mr. Harrell was essentially the "Golden Corral" diet. Her exact words were, "if you see something on the serving line something that bothers you, tell the servers not to give it to you. If you see something you can have, tell them to give you extra of it." Ain't no way in hell that will work! Maybe if she had worked in the facility longer than 3 weeks, she would know that, yet when Mr. Harrell attempted to explain this to her, she decided to continuously interrupt Mr. Harrell. Of course, Warden Norris' response omits a lot of the conversation because Wyse wisely chose to omit the parts she is wrong about, and she wisely chose to omit the parts where she rudely interrupted Mr. Harrell repeatedly. And of course Warden Norris will always believe staff over any inmate; however, the scale does not lie about Mr. Harrell's weight loss.

As to the issues of Ms. Curry, please see grievance #25-028. If Ms. Curry would have simply instructed her staff to only serve Mr. Harrell the foods on his list, this would not be an issue. Instead, Ms. Curry ignored Mr. Harrell repeatedly, instead choosing to instruct her staff to serve both Mr. Harrell and Mr. Wiley the exact same foods as if they have the exact same problems. The idea that two different men have two very different medical conditions befuddled her. All she had to do is read what Mr. Harrell wrote, since she refused to actually listen to what he verbally said. This is simply her refusal to listen to Mr. Harrell or her inability to properly train her staff, both inmate and civilian.

Since Warden Norris implied Mr. Harrell continuously ordered protein bars, maybe DOC needs to actually look at his actual receipts? Then maybe compare the fact that Mr. Harrell ordered 7 protein bars and still has 6 of them in his box collecting dust. If he could eat them pain free, that number would be zero. Of course, Wyse refused to listen to Mr. Harrell saying that, instead choosing to document that Mr. Harrell can eat them pain free. If that were true, that Mr. Harrell could safely eat these items, he would continue to order them. Logic escapes most DOC staff, which is why this logic has not clicked with you. But this is what happens when one human refuses to allow the other human to speak without interrupting them; the rude staff member does not hear what the inmate is saying. Yes, after being rudely interrupted multiple times, Mr. Harrell chose to leave the room because obviously what he had to say meant nothing to Wyse, and if Wyse is not going to allow Mr.

Harrell to answer the questions, why should he waste his time being disrespected. For the dense crowd, since Mr. Harrell was able to diagnose the foods that cause him pain, he has been on a "Choice diet," which means he makes the choice to eat calories that cause him pain or do without, because Ms. Curry refuses to serve a proper amount of pain-free calories daily to Mr. Harrell. "Choice diet;" what a novel idea for a name to simply survive.

As to the remedies that have thus far been denied and will continue to be denied, the MDT hearing with everyone involved. Of course Warden Norris balked at this idea as it would clear up all confusion, would be recorded for the court to review, and might just offer some simple solutions to Mr. Harrell's weight loss. But of course, no one in DOC wants to do the common sense approach as that is the simplest solution that will work, or its because it is an inmate's idea, and ain't no way DOC will ever admit an inmate has a good idea. The reasons the MDT would work is the exact reason Warden Norris opposes it—because then staff cannot lie and change the narrative to make them look better while making the inmate look worse. Mr. Harrell has repeatedly told everyone what foods he can safely eat, and which ones have a documented history of causing him pain. Just because Ms. Curry cannot read this list and Wyse "did not want to review Mr. Harrell's chart" to read this list, that is not Mr. Harrell's fault. He wrote this list in plain English, so everyone involved can read it, then re-read it, and even photocopy it for the cooks to follow, and have chosen not to.

So what is the moral to this grievance? You, the person reading this, have allowed staff to alter Mr. Harrell's daily calorie intake, and will be answering the question of "why" in court. Mr. Harrell lost 15 pounds in the month of February and not a single staff member has made an attempt at placing Mr. Harrell on a diet where he can safely eat 2200-2800 calories a day. But then again, as January 01, 2025 proved, Ms. Curry believes she only has to serve Mr. Harrell 1670 calories a day, even if he cannot eat all of them. Warden Norris believes that as long as DOC "offers" Mr. Harrell enough calories, it does not matter whether or not Mr. Harrell can safely eat them. Mr. Harrell is expected to eat whatever DOC provides, no matter if it causes him pain or not, this fact does not matter to DOC. Maybe the court/jury will agree, maybe they won't, but there is only one way to find out. This is your choice, not Mr. Harrell's. No one consulted Mr. Harrell for his opinion before making such a drastic decision in his life.

Since you refuse to grant request 1 below, or any request for that matter, Mr. Harrell sees no other option than to question these people one at a time on the witness stand as to why they denied Mr. Harrell's request. Since Mr. Harrell is serving 50 years to life, if you kill him by starving him to death, you will not get those 50 years as dead inmates don't earn you money. You need Mr. Harrell not to starve to death so you can stay employed.

**ATTEMPTS TO RESOLVE EVENT** (SECTION B – CONTINUED)

WDOC Form #320 to Warden Norris; HSR's to medical; open letter to multiple people; attached.

**REQUESTED REMEDIES OR RELIEF** (SECTION C – CONTINUED)

1. Set up the MDT meeting Mr. Harrell has been requesting for the past few months with NaphCare's doctor, Warden Norris, Kitchen Supervisor E. Curry, the DOC dietician, ADA Coordinator S. Leever, the Canteen manager, along with Mr. Harrell, to discuss what foods Mr. Harrell has identified as "irritating."
2. Resume removing the list of "irritating" foods Mr. Harrell has compiled over the past year from his meals so he can resume eating three meals a day by instructing the kitchen which foods to avoid giving Mr. Harrell.
3. Allow Mr. Harrell the ability to order canteen that does not have these "irritating" foods in them.
4. Send Mr. Harrell to a GI specialist to determine why he is pooping 5-7 times a day, sometimes with blood.
5. Send Mr. Harrell to an allergy specialist to identify all the foods that are "irritating" to Mr. Harrell.

rec'd 2-28-25

THE STATE OF WYOMING

Mark Gordon
Governor

# Department of Corrections
## Wyoming Medium Correctional Institution
7076 Road 55F
Torrington, Wyoming 82240
Telephone: (307) 532-3198
FAX: (307) 532-3240

Daniel Shannon
Director

Seth Norris
Warden

February 27, 2025
Inmate Harrell, Christopher #26939

Re: Grievance #25-037

Inmate Harrell, having reviewed all pertinent information regarding the matters, I have reached a determination. Your grievance appeal is centered on your belief that you are losing too much weight after being removed from the FODMAP diet. You also voice concern that this was not accepted as an emergency grievance like you requested. You state that "after over a year, you have tried to be patient hoping and praying that staff would finally listen to your complaints and actually try to remedy the problem without it getting to this point." You state that since you are not allowed to order canteen that will comply with your medical condition, you have stopped ordering canteen food products.

For resolution you would like:

- Set up an MDT meeting with Naphcare, Warden Norris, Food Service manager Ms. Curry, and the DOC dietician, ADA coordinator Scott Leever, the Canteen manager, and yourself to discuss food you find irritating.
- Resume removing the foods that you identify as irritating from your meals
- Allow you to order canteen that does not have the irritating foods in them
- Send you to a GI specialist
- Send you to an allergy specialist

For a response, I have assigned WMCI staff to investigate your concerns. My decision is based on their findings. You were removed from the FODMAP diet on January 29, 2025 and placed on a gluten free diet. The purpose of this change was because WDOC policy only allows for certain diets to be ordered, FODMAP is not on the list. FODMAP is also used as a temporary diet and is not used for long term. The FODMAP diet was not helping, as you repeatedly had complaints/concerns with foods approved for that diet.

According to the medical department, they have repeatedly tried to speak with you in regards to your diet and what foods cause you pain. HSA Wyse spoke with you on 2/25/25 trying to help find a solution, and you yelled at her and told her "well we will see what the judge says when I see you in court". Ms. Wyse tried to explain that the FODMAP diet is not a long term diet/solution. Ms. Curry has also tried speaking with you repeatedly concerning your diet and you have walked away from her as well.

Your current canteen orders for the month of February include: diet mountain dew, protein bars, skittles drink mix, coffee. You complained to HSA Wyse that dairy and soy are things you cannot eat, yet the protein bars you ordered contain both these items. In fact you were

specifically asked if those bars caused you issues and you stated no. It was suggested to you, before you got upset at Ms. Wyse that the provider suggests a choice diet, meaning you can choose what you should eat from what is offered at each meal.

I see no reason to have an MDT, when you refuse to speak with individual persons that you want included in the MDT. You are also repeatedly rude and disrespectful to those staff members.

As such, I consider grievance #25-037 denied of remedies at this time. If you are dissatisfied with this response, you may appeal to the Director for a final decision within ten days per the instruction in the Inmate Communication and Grievance Procedure Policy #3.100.

Respectfully,

Seth Norris
Warden/WMCI

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #322 | Page 1 of 2 |
|---|---|---|
| | Inmate Grievance Appeal Form | Last Revised: 12/02/16 |

# INMATE GRIEVANCE APPEAL FORM

**Grievance Directed to: (check one)**
- [x] **Warden/CEO (First Appeal)**
- [ ] **WDOC Director (Second Appeal)**

Inmate Name: Harrell WDOC # 26839
Institution: MCI Unit/Cell: D 4 103
Date: 2·13·25 Time: 0800 Grievance # 25-037

**Provide a clear, straightforward statement of the problem.**
**You may provide up to two (2) additional pages if necessary.**
**The appeal shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing an appeal.**

See attached.

**Give a description and dates of your efforts to resolve the problem by talking to staff, completing an inmate communication form, and filing an inmate grievance. Include reason(s) why the result was not satisfactory.**

See attached.

**Provide a clear statement of exactly what relief or remedy is expected.**

See attached.

**Inmate Signature:** [signature]

**Administrative Use**

| Grievance Number: | 25-037 |
|---|---|

**DESCRIPTION OF EVENT** (SECTION A – CONTINUED)

This is an appeal of grievance manager Emigh's response dated February 12, 2025. It needs to be addressed here that this was filed as an emergency grievance and denied by Mrs. Emigh with no reasons listed. Per WDOC policy #3.100, p. 4:

> "**G. Emergency**: Any condition or situation where **life, health, or safety** may be threatened or where time frame considerations necessitate an immediate response or remedial action."
>
> "**H. Emergency Grievance**: (For this policy only.) A grievance involving a problem which results from an unforeseen combination of circumstances, or the resulting state of those circumstances, and which calls for immediate action. If disposition of the grievance according to the regular time limits would subject the inmate/offender **to a substantial risk of personal injury or cause other serious or irreparable harm** to the inmate/offender, it will be considered an emergency.

Mrs. Emigh chose not to explain how removing Mr. Harrell from the FODMAP diet did not subject him "to a substantial risk of personal injury or cause other serious or irreparable harm to" Mr. Harrell. Mr. Harrell has continued to drop weight due to the fact the kitchen is now serving Mr. Harrell food that both WDOC and medical staff are aware cause Mr. Harrell GI pain, which he has chosen to avoid eating as he is tired of continuously being in pain. Because of this fact, Mr. Harrell's "life, health and safety" are all being significantly affected by the loss of calories and weight. Mrs. Emigh is astute to point out that Mr. Harrell has been seen on camera giving his food away, which is why Mr. Harrell attempts to sit at the closest table to the camera at every meal, just so you can see Mr. Harrell is not lying about not being able to eat most of the food served to him.

At this point, even a moron would be asking why Mr. Harrell is not eating the food he is giving away, and the answer is so simple that Mr. Harrell has been repeating it for over a year now—those foods cause him pain. Shocking right, that as dumb as Mr. Harrell is, even he reaches a point where he is tired of being in pain and would rather lose weight than continue to put himself through that misery at every meal. Mr. Harrell has tried being patient, hoping and praying that staff would finally listen to his complaints and actually try to remedy the problem without it getting to this point. As history will show, staff does not care (including the people reading this now), who have the power and authority to remedy the problem, and are choosing not to.

Mr. Harrell has requested the ability to order canteen that will comply with his medical conditions and has been repeatedly denied, so he has stopped ordering all canteen food products. Since staff will not be able to see the correlation between Mr. Harrell's weight loss and his diet being changed along with his no longer ordering canteen, Mr. Harrell will make it clear—when humans eat less and continue with living their lives normally, weight loss will occur. The less calories humans eat, the more weight loss they will **SUFFER**. Real simple, right?

Finally, what is comical is the point Mrs. Emigh said about Mr. Harrell's BMI. How many staff members have a "normal" BMI? Mr. Harrell is willing to bet even the doctors employed in WMCI do not have a "normal" BMI. Even Ray Charles could see the obesity problem of WDOC staff, yet two weeks into Mr. Harrell's diet change and he is almost at the bottom end of the BMI chart with no end in sight. Much like the children's game of limbo, how low can he go?

Mr. Harrell feels no need to repeat what he said in his original grievance until he prepares the §1983 where this matter will be presented to the court. Clearly Mr. Harrell's "personal desires" to not starve to death are overruled by staff's opinions of Mr. Harrell's "health care needs." And who made this decision? Oh yeah, the person who said he reviewed Mr. Harrell's "draft of Civil Rights Complaint." Even Helen Keller said that does not look good, but apparently you are willing to double down on your decisions?

**ATTEMPTS TO RESOLVE EVENT** (SECTION B – CONTINUED)

WDOC Form #320 to Warden Norris; HSR's to medical; open letter to multiple people; attached.

**REQUESTED REMEDIES OR RELIEF** (SECTION C – CONTINUED)

1. Set up the MDT meeting Mr. Harrell has been requesting for the past few months with NaphCare's doctor, Warden Norris, Kitchen Supervisor E. Curry, the DOC dietician, ADA Coordinator S. Leever, the Canteen manager, along with Mr. Harrell, to discuss what foods Mr. Harrell has identified as "irritating."
2. Resume removing the list of "irritating" foods Mr. Harrell has compiled over the past year from his meals so he can resume eating three meals a day by instructing the kitchen which foods to avoid giving Mr. Harrell.
3. Allow Mr. Harrell the ability to order canteen that does not have these "irritating" foods in them.
4. Send Mr. Harrell to a GI specialist to determine why he is pooping 5-7 times a day, sometimes with blood.
5. Send Mr. Harrell to an allergy specialist to identify all the foods that are "irritating" to Mr. Harrell.

recd
2.12.25

**Department of Corrections**

**Wyoming Medium Correctional Institution**

# MEMORANDUM

February 12, 2025

**To:** Inmate Harrell, Christopher #26939
WMCI/D-4

**From:** Jennifer Emigh

**Subject:** Grievance #25-037

**Summary:**

Your contention revolves around you feeling as though you have not been able to eat a complete meal since 1/31/25 at breakfast. You claim you have lost seven (7) pounds since being removed from the FODMAP diet. For resolution you would like: an MDT with food staff, medical staff, Housing Manager Leever, canteen manager and Warden Norris, resume removing the irritating foods from you trays, allow special canteen orders, and send you to a GI specialist and an allergy specialist.

**Investigation:**

For a response, an inquiry into this matter was conducted to include interviews and a review of documentation. Your grievance has been received and reviewed as well as your healthcare record. The purpose of this review is to determine if necessary health care, as determined by your health care providers, has been provided to you. The assessment of your health care needs may differ from your personal desires. On January 29, 2025 you were removed from the FODMAP diet by Naphcare and place on a Gluten-Free diet. HSA Wyse has reviewed your canteen orders and notes that you are currently ordering several foods that contain the same ingredients that you are reporting having issues with. This makes it difficult to diagnose your true food issues. The medical provider has ordered weekly weights to monitor your weight for a month to be done in medical. Your BMI is within national standards for a normal range.

WDOC relies on the knowledge and expertise of qualified, licensed professionals to determine care and treatment.

**Conclusion:**

Inmate Harrell because of the above evidence I consider grievance #25-037 denied of remedies at this time. If desired, you may appeal to the Warden by submitting form #322 within seven days.

**FOR THE DEPARTMENT OF CORRECTIONS**
**WYOMING MEDIUM CORRECTIONAL INSTITUTION**

Jennifer Emigh
Grievance Manager

Cc: grievance files

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #321 | Page 1 of 2 |
|---|---|---|
| | Inmate Grievance Form | Last Revised: 12/2/16 |

# INMATE GRIEVANCE FORM

☒ Check here if this is an EMERGENCY Grievance

Inmate Name: Harrell WDOC # 26939
Institution: MCI Unit/Cell: D 4 103
Date: 2.6.25 Time: 0800

**When completing this form, you may provide up to two (2) additional pages if necessary. The grievance filed shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing a grievance.**

**Summary of the incident or occurrence giving rise to the grievance or reason for the grievance:**

Mr. Harrell has not been able to eat a complete meal since 1.31.25 at breakfast. He has lost 7 pounds due to being removed from his FODMAP diet.

**Summarize your attempts to informally resolve the issue (e.g. verbal discussions, submission of Inmate Communication Form, etc.)**

See all attached.

**I request the following grievance resolution or remedy:**

See attached.

**Inmate Signature:** [signature]

**Administrative Use**

| Grievance Number: | |
|---|---|

WDOC Form #321 – Inmate Grievance Appeal Continuation
Date: February 06, 2025 Time: 08:00

Grievance #: 2025-________
RE: Medical stopping FODMAP diet

**DESCRIPTION OF EVENT** (SECTION A – CONTINUED)

Mr. Harrell began the FODMAP diet in early February, 2024. For the next year, Mr. Harrell struggled to identify all the foods that were causing him GI issues and pain because neither of the medical companies would send Mr. Harrell to an allergy specialist nor allow him to perform the Everlywell test, or to a GI specialist, which meant a lot of "experimenting" to identify the "irritating" and troublesome foods.

As recently as January 27, Mr. Harrell provided Warden Norris the required paperwork to remove peas from his diet so the kitchen would stop giving Mr. Harrell food that hurt him because the kitchen would not listen to Mr. Harrell directly. Then on January 29, 2025 (which Mr. Harrell did not receive until January 31st (Friday), just in time for the weekend), NaphCare's Dr. Scott said "Your FODMAP diet is being discontinued. **Your draft of Civil Rights Complaint was reviewed**." All the trial and error Mr. Harrell has went through for the past year to identify which foods are causing him pain, went right out the window when Dr. Scott changed the medical orders due to Mr. Harrell's "Civil Rights Complaint." This put all those troublesome foods back into Mr. Harrell's diet, which will resume causing Mr. Harrell tremendous pain and suffering because Dr. Scott did not like being told about Mr. Harrell's plan to file a lawsuit seeking medical care. Mr. Harrell has sent countless HSR's to medical attempting to address this problem with zero results or his FODMAP diet being resumed. The closest medical has come to addressing this problem is by saying "Medical can only order WDOC approved diet." A week ago Mr. Harrell was on a WDOC approved diet and able to eat normal meals, and then Dr. Scott removed Mr. Harrell from that diet. No one from medical has discussed this diet issue with Mr. Harrell since January 10th, long before the diet was discontinued due to the attached 5 page letter, which stinks of retaliation.

Dr. Scott's response is attached, wherein he agrees with Mr. Harrell by stating "FODMAP is not intended to be a long-term diet. It is used for 2-6 week to identify irritating foods **which you have successfully done**… You will be placed on a Gluten free diet going forward." without allowing Mr. Harrell to continue to eliminate the "irritating" foods that have caused him pain and he has spent the past year identifying. Because of this order, now the kitchen is serving all the "irritating" foods to Mr. Harrell again, which has placed Mr. Harrell in a very difficult position; eat the "irritating" foods or do without the needed calories. This is called a *Hobson's Choice*, which the courts say is not really a choice at all.

After suffering for the past few years with stomach pain, burning guts, diarrhea, and bloody stools, the FODMAP diet offered some relief from some of the symptoms when the kitchen followed the diet and removed the "irritating" foods. When they did not, Mr. Harrell suffered in pain. This has led to Mr. Harrell losing quite a bit of weight. For the past week, Mr. Harrell has not been able to eat a single complete meal due to Dr. Scott removing Mr. Harrell from the FODMAP diet and putting him on a Gluten free diet. Gluten free allows the kitchen to serve Mr. Harrell the "irritating" foods like regular milk, onions, garlic, broccoli, cabbage, dextrose, beans, and all the other foods that Mr. Harrell had identified as "irritating" to his GI system. Mr. Harrell has made the very conscious decision to stop eating foods that he knows will cause him burning, bloating, cramps and diarrhea, which thus far has resulted in his losing at least 7 pounds in less than a week thus far.

Mr. Harrell has also been denied the ability to order canteen that complied with his diet as Warden Norris and ADA coordinator Leever have denied Mr. Harrell's requests. This also placed Mr. Harrell in a position where he had to decide between paying for food that will give him calories by causing him pain or to do without. Now that Mr. Harrell has stopped ordering canteen, and then Dr. Scott adding the "irritating" foods back into his diet, now the weight is falling off like Mr. Harrell is dying of cancer with no end in sight.

**ATTEMPTS TO RESOLVE EVENT** (SECTION B – CONTINUED)

WDOC Form #320 to Warden Norris; HSR's to medical; open letter to multiple people; attached.

**REQUESTED REMEDIES OR RELIEF** (SECTION C – CONTINUED)

1. Set up the MDT meeting Mr. Harrell has been requesting for the past few months with NaphCare's doctor, Warden Norris, Kitchen Supervisor E. Curry, the DOC dietician, ADA Coordinator S. Leever, the Canteen manager, along with Mr. Harrell, to discuss what foods Mr. Harrell has identified as "irritating."
2. Resume removing the list of "irritating" foods Mr. Harrell has compiled over the past year from his meals so he can resume eating three meals a day by instructing the kitchen which foods to avoid giving Mr. Harrell.
3. Allow Mr. Harrell the ability to order canteen that does not have these "irritating" foods in them.
4. Send Mr. Harrell to a GI specialist to determine why he is pooping 5-7 times a day, sometimes with blood.
5. Send Mr. Harrell to an allergy specialist to identify all the foods that are "irritating" to Mr. Harrell.

Rec'd 2.5.25

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #320 | Page 1 of 1 |
|---|---|---|
| | Inmate Communication Form | Last Revised: 08/23/2024 |
| POLICY REFERENCE: | 3.100, *Inmate/Offender Communication and Greivance Procedure* | |

Inmate Name: Harrell WDOC # 26939 Unit/Cell: A 4103

To: Warden Norris Subject: See attached

**State your problem, question or request here:**

You are personally responsible for my well-being. You are allowing the Kitchen to serve me foods that I have repeatedly told you, Curry, and NaphCare, that cause me pain. Common sense would say for the Kitchen to stop giving me these items but that requires logic, which is illegal in DOC.

This sure looks like retaliation to me. What will the jury think if I live long enough to get it there?

Inmate Signature [signature] Date: 2.4.25

---

**WDOC Response to Problem or Request:**

I have told you several times that you need to submit an HSR to medical regarding further diet/food issues. WMCI is providing you a diet that is consistent with updated medical orders. If further restrictions are submitted by the provider, I will ensure these are adhered to. There is no retaliation regarding this matter, we are following diet orders as currently written.

☐ Request is Approved
☐ Request is Denied

WDOC Staff Signature: [signature] Date: 2/5/25

Printed Name: Warden Norris

**CHRISTOPHER D. HARRELL**
WMCI #26939
7076 Road 55F
Torrington, WY 82240-7771

February 4, 2025

Warden Seth Norris
WMCI
7076 Road 55F
Torrington, WY 82240-7771

RE: Lack of calories

Dear Warden Norris,

Hello. You responded to a #320 yesterday saying that Dr. Scott and I had a conversation and that I was in agreement with his decision to remove me from FODMAP. This is not true, so whoever told you that is a liar. I am sure you have already received the attached 5 page letter dated January 12, 2025, that I sent out to the AG's office, Central, the Governor, NaphCare's HQ, and I dropped a courtesy copy in the HSR box. Please find where it says gluten is my only problem? Dr. Scott then authored this HSR response, and you tell me if the second sentence looks like retaliation? I am sure you will say no, but will the jury? It does not look good either way.

I have identified lots of foods that bother me, which as of Dr. Scott's response, the kitchen is now serving me again, which means I am losing lots of calories because I am done putting myself through hell because DOC and NaphCare refuse to help me. I am now less than 180 pounds. I have stopped ordering canteen, so when the kitchen serves me these items below, I will not be eating it, which will mean more weight loss and eventual death. I am beyond pissed off at how you are allowing staff to starve me to death, which is exactly what is happening.

According to **WDOC policy 4.316, p.7 "10.** In cases where refusal for care is likely to result in imminent danger of loss of life or limb: **i.** The responsible health authority, Prison Division Administrator, and Attorney General's Office shall be notified." Because not eating will eventually kill me, and you refuse to order the kitchen to give me food that I can safely eat, have you contacted these people as policy says you must? Maybe you should?

Harmful items: milk, wheat, onion, garlic, broccoli, cabbage, dextrose, apple juice, apples, apple sauce, orange juice. The biggies are the first 7, **BUT** there are more.

Awaiting a response.

Sincerely,
[signature]

Chris Harrell, 26939

What good is it to identify the bad foods if you are going to keep giving them to me?

"Power tends to corrupt, and absolute power corrupts absolutely." John Emerich Edward Dalberg-Acton.

read 1.31.25

Wyoming Department of Corrections
1934 Wyott Dr.
Ste 100
Cheyenne, WY 82007

PATIENT NOTIFICATION form - completed by Jeff Scott Medical Director on 1/29/2025 5:08:45 PM



| | | | | |
|---|---|---|---|---|
| | Patient Name<br>Harrell, Christopher D | Patient Number<br>20101028001 (26939) | Date of Birth (Age = 42)<br>12/16/1982 | Race<br>White |
| | Location<br>WMCD-4-103-B<br>WMC | Booking Date<br>10/28/2010 4:41 PM MST | Release Date | Sex<br>M |
| Status<br>ACTIVE | Language<br>Not Defined | SSN<br>N/A | Marital Status<br>Not Defined | |

## Patient Notification

English

Dear Sir or Madam,

Reason for notification:

- [ ] Laboratory Test Results
- [ ] X-Ray Results
- [x] Other

Other:

Your FODMAP diet is being discontinued. Your draft of Civil Rights Complaint was reviewed. You indicated you have identified your troubling foods with the biggest issue being Gluten. Gluten is not a sugar it is a protein. FODMAP is not intended to be a long-term diet. It is used for 2-6 week to identify irritating foods which you have successfully done. You also indicated your weight loss which you have had some and is likely due to prolonged use of the FODMAP diet. It is therefore not medically indicated you continue this. You will be placed on a Gluten free diet going forward. You have been referred to a GI doctor and further medication to try and help alleviate your symptoms is up to you. Dr. Scott

"the biggest" issue is not the only issue

Close Form

At that point, under YesCare/Dr. Eskew after pooping blood multiple times, I requested to see a GI specialist and to receive a colonoscopy and endoscope (see grievance #24-022). Later, Dr. Eskew did order a colonoscopy, which led to the events of 8/26/24 (see *Johnson* ECF 211-3, pgs. 34-35), which was post-YesCare and under NaphCare. After that issue of staff disrespect and subsequent lies by Nurses Kelly and Carter, the off-site tests were rescheduled for 12/23/24. After I began the 3 day process (fasting, liquid only diet and colon cleansing chemical), more disrespectful staff decided to wake me up in the middle of the night 4 or 5 times to inform me that my 1130am appointment was being canceled. At 1000am, Nurse Teahon informed me my appointment was not until 1130, which meant the night shift screwed up big time by saying my appointment was a "no-go."

On 1/8/25, I had a 90 minute meeting with Dr.'s Scott and Church to discuss this matter. During this meeting, I was informed I would have to take a medication for 4-6 weeks to "try" to see if this fixes the problems. If not, I would then have to "try" another medication for another 4-6 weeks. **Then**, if those pills did nothing to improve the problems, the colonoscopy/endoscope would be rescheduled, which puts me about 6 months out of more waiting on answers if these pills do not work. It seems all of you want to "try" the cheapest possible options instead of just doing the tests to see what the results actually show, instead of playing a guessing game with my life.

I explained the food/canteen problems during this meeting, and even left the paper copy of *Johnson* ECF 211-3, pgs. 4-18, with Dr. Church. That 15 page document shows what foods I can tolerate, which is a minimal list compared with the rest of the DOC inmates. The point of that was to be allowed to order canteen that complies with the FODMAP diet I began almost a year ago, which has shown relief when the kitchen actually follows the restrictions. This matter of canteen allowance has been grieved (see #24-188). It was also addressed through the facility ADA coordinator Scott Leever (see *Johnson* ECF 205-1, p.5). After being denied the ability to order FODMAP canteen by DOC through Walkenhorst's, I had a conversation with Dr. Scott who questioned the medical training of Mr. Leever, who made the determination that this was "not ADA or medically needed" without speaking with Dr. Scott. However, Dr. Scott said nothing about allowing this request, which is why I requested the court's intervention and was denied on 1/10/25.

It has been demonstrated that DOC/medical are quick to point out my canteen purchases do not comply with FODMAP, however they have refused my every request to allow me to purchase food that does comply with my medical condition. Because my options of canteen are limited, what choices do I have when the kitchen refuses to follow my diet restrictions?

On 1/10/25, I was called down to medical to be informed by Nurse Teahon that Dr. Scott was removing me from the FODMAP diet, saying I could "eat around the foods that bother" me. I pointed out that this will result in more weight loss as the biggest food that causes me problems is wheat (gluten). Since inmates are fed so much gluten as it is a cheap calorie to feed us, I would be missing lots of calories by "eating around troublesome foods." I informed Nurse Teahon of the impending lawsuit if I am removed from this diet. At this point, Dr. Church walked into the conversation to inquire about my frustrations, so I proceeded to begin the conversation over again for him. He asked me to send him another request (HSR attached) after I showed him the court's 1/10/25 ruling.

**CHRISTOPHER D. HARRELL**
WMCI #26939
7076 Road 55F
Torrington, WY 82240-7771

January 13, 2025

Office of the Governor
Mark Gordon
200 W. 24th Street
Cheyenne, WY 82001

NaphCare Headquarters
Legal Division
2090 Columbiana Road, Suite 4000
Birmingham, AL 35216

Wyoming Department of Corrections
Daniel Shannon, Director
1934 Wyott Drive, Suite 100
Cheyenne, WY 82002

Bridget Hill, Attorney General
Office of the Wyoming Attorney General
200 West 24th Street, Suite 109
Cheyenne, WY 82002

Dear interested parties,

Hello. I (Mr. Harrell) am sending this same letter to everyone listed above so that everyone knows the same information. I realize none of you personally care about more lawsuits as you do not personally pay for the attorneys or the jury verdicts. Maybe if you personally were financially responsible for your decisions to deny me medical care that force me to remain in pain without offering me the available treatments or to even begin the process to properly diagnose the cause of my problems, then maybe I would not be writing this letter? However, as history has shown, I have zero problems filing paperwork with the courts and will continue to do so if my problems are not treated. Due to the court's ruling on January 10, 2025 (*Harrell v. Johnson et. al.,* Document 212), if this problem is not remedied, it will need to be filed as a new action, hence this final opportunity for you to resolve this without the further needs of the court.

Because the Department of Corrections (DOC) has repeatedly told my family and me personally, "this matter is involved in litigation, it will not be addressed," here is your chance to discuss (and fix) these problems as Friday's ruling means it is not currently involved in litigation. I am attaching a rough draft of what the header will look like when I file this lawsuit as it stands right now. If you would like to remove your name/for-profit business/organization, it would behoove you to remedy the problems sooner rather than later. Failure to remedy my problems will result in your name staying on the attached sample heading; it is your call. But again, since the Wyoming tax payers will be on the hook for the lawyers' bills and judgments and not you personally, I am certain where this matter will be decided, unfortunately.

Here is the crux of the problem I am dealing with, and yes, I have a paper trail. After crushing my thumb in the bathroom door in the kitchen of this facility on May 25th, 2020, the Defendants named in *Harrell v. Johnson et. al.* forced me to wait 1,206 days for surgery. During that time, I ate copious amounts of NSAID's to combat the pain along with countless other medications prescribed by those lawsuit generating medical companies. Until I had surgery September 13, 2023, I had attributed my current GI issues to being side effects of the nerve damage medications I was taking in an attempt at pain relief. Post-surgery, when I stopped all medications and the GI issues persisted, this meant there was a bigger problem (see HSR dated 10/25/23).

I have been given what the courts call a *Hobson's Choice*. December 19, 2022, I weighed 213 pounds. December of 2024, I weighed 180. Because I am continuously forced to eat food served in the kitchen that does not comply with FODMAP that causes me tremendous amounts of GI pain, diarrhea, cramps, burning sensations, bloody poop, etc., I am forced to decide how much pain I would like to endure to acquire enough calories to survive. If the kitchen actually complied with FODMAP, the amount of pain I endure is reduced significantly, if not eliminated completely, which is rare for the kitchen to do. However, when mistakes are made, I address them with kitchen staff such as Mr. Hiegel, who not only refuses to correct the errors, but then cusses at me saying I am "shit outta luck," and instead of taking the time to prepare me a meal I can eat safely, he issues me a write-up after he agitated me to the point of frustration, for saying "Obviously you can't fucking[1] read" while pointing to my FODMAP diet sheets that show what foods I can/cannot eat. After addressing that issue with the court, Mr. Hiegel went a step further to again cuss at me on 12/30/24 while accusing me of being gay by saying "I see you standing by your fucking boyfriend Miller." This matter is currently under "investigation" by the same DOC staff member who found me guilty of the write-up issued by Mr. Hiegel, wherein it was decided that staff can cuss and deny me food, but I need to be the moral leader and to take the high road by accepting the fact that DOC gets to decide whether or not I get fed 3 meals a day as the law requires.

To the point of this letter:

- I need to see a GI specialist; I need to know why I am pooping blood.
- I need to see an allergy specialist; I need to know what foods are causing me pain and which ones I can safely eat, without being told to "try" this or that. I have requested an Everlywell test that will do this, however I have been repeatedly denied (see grievance #24-213).
- I need the kitchen to feed me three meals a day that follow the FODMAP restrictions, and when mistakes/errors happen, to fix them without cussing at me, infuriating me, and then retaliating against me for reacting to being told to starve[2].
- I need the ability to order canteen that I can eat without causing me pain (see #24-188).
- I need the ability to take Loperamide (currently being grieved to make it KOP as Dr. Scott has ordered it) without having to wait hours for the next pill call, only to have to stand in line and wait longer, to take something to slow the diarrhea down.

Now at this point, maybe you are saying you do not care as this does not affect you as you have a free lawyer through the Attorney General's Office, and the Department of A&I or your medical insurance will pay the jury verdict, and you will just throw this away with no action being taken? Ask Corizon how that logic is working out for them. Maybe you are thinking you are not liable for any of this? Maybe you think you can lie your way out of this and the Attorney General will support your lies as they did for my criminal conviction that put me in prison, so why not give it a shot?

---

[1] 1st Amendment right, see the caselaw cited in the disciplinary appeal.

[2] This keeps happening by the same staff member—three times in less than 22 days just in the month of November, by Z. Heigel.

Are you liable? Wyoming State Statute § 25-1-104 says; "(b) ... Specifically the department has general supervision and control of, **and shall provide for the care and maintenance of all inmates**..." and "(h) The department of corrections has general supervision and control of, **and shall provide for the care and maintenance of all inmates**..." (Emphasis added). It is also against DOC Policy and Procedure #4.307 for security (including the Warden and Director) to deny Mr. Harrell medical treatment, which says: **B. Inmate Access to Health Care Services...** Clinical judgments shall rest with a single, designated, licensed, responsible physician. **No member of the correctional staff should approve or disapprove offenders' requests for health care services** (Emphasis added). When DOC denies a grievance, that is exactly what DOC is doing, which is why all medical staff need to work directly for DOC instead of a for-profit medical contractor. Logic dictates if they can turn a profit, then why isn't DOC interested in keeping the profits in-house? No matter what, DOC is still liable through the courts.

Now the law says:

> "**Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody**, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." (Emphasis added)

*West v. Atkins*, 487 U.S. 42, 56 (1988)

> In analyzing **<u>supervisory</u>** or **<u>municipal liability</u>**, courts generally refer to the person who committed the underlying constitutional violation as a "subordinate." *See, e.g., Dodds*, 614 F.3d at 1194-95 ("To impose 1983 liability the plaintiff first had to establish the supervisor's subordinates violated the [C]onstitution" (quotations omitted))...
>
> [Footnote 17] **<u>For supervisory liability</u>**, a supervisor[3] may be liable even if the person who committed the underlying constitutional violation was not an employee. See *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (requiring a plaintiff to show an affirmative link "between the supervisor and the constitutional violation" and that the supervisor had more than "mere knowledge of his subordinate's conduct" (emphasis added) (quotations omitted)).
>
> **<u>For municipal liability</u>**, courts have held entities[4] liable for the actions of independent contractors. In *King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012), the Seventh Circuit held a county could be liable for the deliberate indifference of jail medical providers employed by an independent contractor to which the county had delegated "**final decision-making authority . . . over inmates' access to physicians and medications**." Id. at 1020-21; see also *Layton v. Bd. of Cty. Comm'rs of Okla. Cty.*, 512 F. App'x 861, 864-72 (10th Cir. 2013) (unpublished) (reversing grant of summary judgment because county could be liable for actions of contracted jail medical providers). In *Crooks v. Nix*, 872 F.2d 800 (8th Cir. 1989), the Eighth Circuit explained that **prison officials could be liable for the deliberate indifference of contracted medical personnel**. Id. at 803-04.

---

[3] As the Director of DOC, this is Defendant Shannon.

[4] Such as the Wyoming Department of Corrections.

*Burke v. Regalado*, 935 F.3d 960, 996, fn 17 (10th Cir. 2019) (Emphasis added)

> The Eighth Amendment creates an obligation on the part of **prison officials to provide adequate health care to inmates.** *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).
>
> ...
>
> Before proceeding to the merits of Mr. Parker's Eighth Amendment claim, we note that the Medical Center and the individual doctors, as employees of the Medical Center, are subject to liability under 1983 for the Eighth Amendment violation alleged in this case, **either as independent state actors for a state university, or because the Medical Center <u>contracted with the State</u> of Oklahoma to provide medical care to state prisoners** such as Mr. Parker, *see West v. Atkins,* 487 U.S. 42, 54-57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (**holding that a private doctor treating prisoners under a contract with state prison authorities acted under color of state law for purposes of 1983 suit alleging Eighth Amendment violation**). (Emphasis added)

*Parker v. Gosmanova*, 335 Fed. Appx. 791, 793 (10th Cir. 2009)

It does no good to hire a new for-profit medical company if you keep the same evil human beings who think all inmates are liars and refuse to treat our problems.

So, would you like to sit down to discuss this or do you want to deny this request and hope I starve to death so I do not succeed with the forthcoming lawsuit? That choice is yours, but when the attached HSR's are denied in the final step of the grievance, guess what is getting filed? Threats are just promises not acted upon. Please call my bluff! Or you can fix the problems above now so I can do something besides my current hobby, the choice is yours.

Awaiting a response.

Sincerely,

Chris Harrell, 26939
Enclosures
Xc: file
Cc: WMCI HSR box

CHRISTOPHER D. HARRELL
WMCI #26939
7076 Road 55F
Torrington, WY 82240-7771
Plaintiff, in propria persona

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

**CHRISTOPHER D. HARRELL,**
Plaintiff,

vs.

**NAPHCARE**, For-profit medical contractor; **Dr. JEFF SCOTT**, Regional Medical Director; **Dr. CHURCH**, Facility Medical Director; **YESCARE**, For-profit medical contractor; **Dr. PHILIP ESKEW**, Facility Medical Director; **WDOC,** Governmental Entity; **DANIEL SHANNON**, Director, Wyoming Department of Corrections; **SETH NORRIS**, Warden, Wyoming Medium Correctional Institution; **EDNA CURRY**, Kitchen Supervisor, Wyoming Medium Correctional Institution; **Z. HEIGEL**, Kitchen Supervisor, Wyoming Medium Correctional Institution;
Defendants.

CASE NO. 2025-cv-000-000

## PRISONER CIVIL RIGHTS COMPLAINT

COMES NOW, Plaintiff Christopher D. Harrell, *in propria persona*, and pursuant to 42 U.S.C. § 1983, et seq., brings this civil rights *Complaint* against the above-named Defendants and states as follows in support hereof: Section 1983 provides for a civil cause of action against any person who, under color of state law, deprives the plaintiff of his or her "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

Attn: Dr Scott 2·2·25 Lunch rec'd 2·5·25

**NAPHCARE MEDICAL DEPARTMENT**
**SICK CALL REQUEST-MANAGED BY TECHCARE** 2/2

| Date and Time Received | Received By |
|---|---|
| 2/3/25 0100 | [illegible] |

| Name (Nombre) | Date of Birth (Fecha de Nacimiento) | Location/Unit (Posicion/Unidad) | Inmate Number (Número de Recluso) | Today's Date (Fecha de Hoy) |
|---|---|---|---|---|
| Christopher Harrell | 12·16·82 | D4103 | 26939 | 2·2·25 |

Complaint (Queja)

Another meal with very limited calories. All I could safely eat was scrambled eggs & sausage patty. I lost out on hash browns, cold cereal, butter & jelly, milk and apple juice. Oh, I had a banana, cannot forget about those few calories. What did you hope to prove by doing this?

Inmate Signature (Firma de Recluso) C D Hall

**TRIAGE**
**Action Taken**
☐ Refer to Provider – Sick Call; ☐ Refer to MH – Sick Call; ☐ Refer to MH – Chart Review
☐ Refer to Medical Records; ☐ Refer to OB/GYN; ☐ Refer to Dental
☐ Refer to Optometry; ☐ Nursing Protocol Initiated ☒ Other: Clinic

| Face to Face Date | Face to Face Time | Staff Signature |
|---|---|---|
| | | |

Nursing
S:

| O: | Temp | Pulse | Resp | O2 Sat | B/P |
|---|---|---|---|---|---|
| | | | | | |

A: Medical can only order WDOC approved diet

P:

E:

| Nurses / Provider Signature | Date Completed | Time Completed |
|---|---|---|
| [signature] | 2/5/25 | |

**For Jail Use Only**

Attn: Dr. Scott 2.2.25 Dinner recd 2.5.25

**NAPHCARE MEDICAL DEPARTMENT**
**SICK CALL REQUEST-MANAGED BY TECHCARE** 42

| Date and Time Received | Received By |
|---|---|
| 2/3/2025 0100 | [illegible] |

| Name (Nombre) | Date of Birth (Fecha de Nacimiento) | Location/Unit (Posicion/Unidad) | Inmate Number (Número de Recluso) | Today's Date (Fecha de Hoy) |
|---|---|---|---|---|
| Christopher Harrell | 12.16.82 | D4/103 | 26939 | 2.2.25 |

Complaint (Queja)
Since I cannot eat onions, garlic, peas, etc, the only thing I was able to eat was mandarin oranges. How do you think this will help me gain weight? this little ~~[illegible]~~ experiment of yours failed horribly. What is your next torture tactic?

Inmate Signature (Firma de Recluso) [signature]

**TRIAGE** **Action Taken** ☐ Refer to Provider – Sick Call; ☐ Refer to MH – Sick Call; ☐ Refer to MH – Chart Review
☐ Refer to Medical Records; ☐ Refer to OB/GYN; ☐ Refer to Dental
☐ Refer to Optometry; ☐ Nursing Protocol Initiated ☒ Other: Clinic

| Face to Face Date | Face to Face Time | Staff Signature |
|---|---|---|
| | | |

Nursing
S:

| O: | Temp | Pulse | Resp | O2 Sat | B/P |
|---|---|---|---|---|---|
| | | | | | |

The provider is not experimenting.
A:

P:

E:

| Nurses / Provider Signature | Date Completed | Time Completed |
|---|---|---|
| [signature] | 2/5/25 | |

**For Jail Use Only**

Jan 2019 White – Chart Canary – Inmate Sick Call Request – Bi Lingual